OPINION
{¶ 1} The second petitioner-appellant, Gary Kohlhorst, appeals the judgment of the Auglaize County Common Pleas Court, Domestic Relations Division, modifying his child support obligation.
 {¶ 2} This dissolution case originated in 1993 between Gary and the first petitioner-appellee, Angel Kohlhorst, now known as Dungan ("Angel"). The facts pertinent to this appeal are as follows. On November 11, 2005, the Auglaize County Child Support Enforcement Agency ("CSEA") filed a motion to modify child support. CSEA requested the trial court increase the amount of child support paid by Gary for the parties' two minor children.
 {¶ 3} On March 14, 2005, the trial court held a hearing on the motion. Present for the hearing was a representative of CSEA; Angel, represented by private counsel; and Gary, represented by private counsel. Gary presented the testimony of Jared Walsh, his certified public accountant, and marked one exhibit, which was withdrawn at the end of the hearing. Angel cross-examined Walsh, and the CSEA representative and the court inquired as well.
 {¶ 4} The parties apparently agree as to the relevant facts. Gary owns and operates a business known as Hydro Services Tank Cleaning, Inc. Between 1997 and 2002, Gary operated the business as a sole proprietorship. In 2002, he incorporated the business. Unfortunately, Gary failed to establish good accounting habits and failed to pay various federal and state taxes. Walsh was retained in 2004 to help bring the business into financial compliance. For the tax year 2003, Walsh was unable to balance the business' credits and debits, and the documents required to complete the reports either did not exist, could not be located, or were insufficient. As a result, and at the recommendation of the Internal Revenue Service, Walsh assigned $100,319 to Gary as income in 2003. The same problem occurred in 2004, and Walsh assigned $101,813 as income to Gary.
 {¶ 5} At the end of 2004 and into 2005, Walsh placed Gary on the business' payroll and required him to take weekly paychecks of $500. Therefore, in 2005, Gary's income was $23,800. Walsh testified there was no procedure in place to prevent Gary from taking other money from the business in order to pay personal expenses, and it was possible Gary could have taken an additional $49,000 as income in 2005.
 {¶ 6} Walsh also testified that the business, which had enjoyed gross income exceeding one million dollars in 2003 and 2004, suffered a decline in gross income of approximately $600,000 for 2005. At the same time, Gary continued to owe federal and state taxes. Walsh testified that Gary owed $472,285 in principal to the Internal Revenue Service; $124,922 to the State of Ohio for income tax, withholding tax, and unemployment tax; and $125,391 to Ohio's Bureau of Worker's Compensation.
 {¶ 7} At the close of evidence, the trial court stated:
 [t]here is no real way to determine, based upon the information before the Court, what [Gary's] actual income is other than to accept as his income the amounts reported on his federal tax returns in 2003 and 2004. In 2005, he's gotten income of apparently, according to (indiscernible) reported W-2's of twenty-three eight, although the accountant's not able to testify as to the accuracy of those figures either.
(Hearing Tr., Jun. 12, 2006, 33:12-19). In calculating support, the trial court stated that it "imputed" $100,000 as income for 2005. The court then averaged Gary's incomes from 2003, 2004, and 2005 and ordered him to pay $1,388.15 per month. Gary now appeals and asserts two assignments of error for review.
 Assignment of Error I The Common Pleas Court of Auglaize County, Ohio committed reversible error in improperly and incorrectly imputing income to [Gary] for the purposes of determining his current child support obligation.
 Assignment of Error II The Common Pleas Court of Auglaize County, Ohio committed reversible error in averaging [Gary's] income for the tax years 2003, 2004, and 2005 for the purposes of computing his current child support obligation.
 {¶ 8} In the first assignment of error, Gary contends the trial court erred by imputing income to him for 2005. Gary contends pursuant to R.C.3119.01(C)(5), the trial court must make a finding that he was either voluntarily unemployed or voluntarily underemployed before it imputes income. In its brief, CSEA agreed with Gary that the trial court must make an explicit finding of voluntary unemployment or voluntary underemployment before imputing income. In response, Angel argues the trial court did not err because it can consider Gary's potential income, which is derived from the business. Angel contends that imputing income to Gary eliminates his ability to hide assets within a closely held corporation at the expense of the children.
 {¶ 9} A trial court has discretion in determining child support orders; therefore, its judgment will not be disturbed on appeal absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. An "'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144 (internal citations omitted).
 {¶ 10} In computing a child support obligation, the trial court must consider, in part, both parents' incomes. R.C. 3119.05(A). "Income" is defined as "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5). A court must apply the factors set forth in R.C. 3119.05 in calculating income. R.C. 3119.05(A) states:
 [t]he parents' current and past income and personal earnings shall be verified * * * by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income , tax returns, and all supporting documentation and schedules for the tax returns.
(Emphasis added). The statute clearly imposes the duty on the parents to verify their income, including self-generated income.
 {¶ 11} In this case, Gary has clearly not verified his income for 2005. Testifying on Gary's behalf, Walsh stated that Gary earned $23,800 in 2005 after taking weekly paychecks of $500. (Hearing Tr., at 18:4-14). However, he also testified that there is no procedure in place to trackwhether Gary takes money from the business, so it is possible he may have taken cash advances for personal use. (Emphasis added.). (Id. at 17:20-25; 18:15-21; 19:2-6). Walsh also testified that Gary could have taken an additional $49,000 from the business to pay personal expenses in 2005. (Id. at 20-21). Because of the uncertainty in determining Gary's actual 2005 income, the trial court found that Gary had income of $100,000. (J. Entry, Apr. 7, 2006, at 2, ¶ 1) ("[Gary's] accountant was unable to verify the accuracy of the 2005 income * * *. The Court therefore [f]inds that in 2005 the Second Petitioner Gary A. Kohlhorst had a potential income of $100,000.00 and imputes that income to him based on the best available information before the Court".)
 {¶ 12} This Court cannot find the trial court abused its discretion in estimating income of $100,000 on this record. See generally Smith v.Quigg, 5th Dist. No. 2005-CA-002, 2006-Ohio-1495, at ¶ 50. ("Appellant did not verify his income * * * . Considering the conflicting evidence, appellant cannot now complain the court erred, because he invited any possible error by not submitting verification of his income as required by statute."). Although the trial court used the term "impute," this Court believes it simply erred in its choice of wording. The first assignment of error is overruled.
 {¶ 13} In the second assignment of error, Gary contends the trial court erred in averaging his income for 2003, 2004, and 2005. Gary argues that averaging his income during these years is inappropriate because the figures reported in 2003 and 2004 were "speculative," he owes back taxes of approximately $720,000 to several different agencies, and even if the 2003 and 2004 incomes were accurate, he has clearly suffered a significant decline in income in 2005.
 {¶ 14} In response, both Angel and CSEA contend the trial court did not err. Angel contends that averaging income is appropriate when income is inconsistent or unpredictable. Angel contends the evidence does not indicate why the gross income of the business was drastically reduced in 2005, and she contends Gary's earning capacity has not been affected by his tax debt. Likewise, CSEA contends that averaging Gary's income was appropriate since he owns a business and his income is unpredictable. CSEA argues that calculating income based only on the 2005 income of $23,800 would punish the children.
 {¶ 15} R.C. 3119.05(H) provides, "[w]hen the court or CSEA calculates gross income, the court or CSEA, when appropriate, may average income over a reasonable period of years." The trial court's decision to average income is within its discretion and will not be reversed absent an abuse of discretion. Scott G.F. v. Nancy W.S., 6th
Dist. No. H-04-015, 2005-Ohio-2750, at ¶ 46 (citing Luke v. Luke (Feb. 20, 1998), 11th Dist. No. 97-L-044, unreported; Ferrero v. Ferrero (Jun. 8, 1999), 5th Dist. No. 98-CA-00095, unreported; McGuire v. McGuire
(Mar. 8, 2002), 4th Dist. No. 01CA2789, 2002-Ohio-1061; Johnson v.Huddle, 4th Dist. No. 03CA19, 2004-Ohio-110). See also Fisher v.Fisher, 3rd Dist. No. 7-05-03, 2005-Ohio-5615. Income averaging is a useful method of calculating gross income when an obligor's income is "unpredictable or inconsistent." Scott G.F., at ¶ 47.
 In other words, income averaging is appropriate when gross income varies due to circumstances and factors beyond the parent's control, no matter what the source may be. It is no more 'fair' to penalize a parent and order much higher child support after an uncommonly good financial year, than it would be to penalize the child for a parent's temporary decline in income.
Id.
 {¶ 16} The parties stipulated to Gary's incomes for 2003 and 2004. (Hearing Tr., 5-6). Walsh testified that the income for 2003 and 2004 was calculated to balance out the books, so Gary's actual income could have been more or less than what was reported. (Hearing Tr., at 28:19-21). As stated above, Walsh testified that Gary earned $23,800 in 2005, there was no procedure in place to determine if Gary had taken additional funds from the business, and Gary could have taken an additional $49,000 in 2005 as Gary could not account for those funds. (Hearing Tr., at 18:4-14; 17:20-25; 18:15-21; 19:2-6; 20-21). While the business suffered a significant decrease in earnings in 2005, Walsh was unable to explain that result. (Hearing Tr., at 31:1-4).
 {¶ 17} The inconsistencies in income are apparent in the numbers on their face and in their calculation. Gary has created a situation where his income has been inconsistent, and certainly unpredictable, between 2003 and 2005. On this record, this Court cannot find the trial court abused its discretion in averaging Gary's income to calculate child support. Furthermore, this Court notes that the trial court has continuing jurisdiction to modify child support at a later time. The second assignment of error is overruled.
 {¶ 18} The judgment of the Auglaize County Common Pleas Court, Domestic Relations Division, is affirmed.
Judgment affirmed.
ROGERS and SHAW, JJ., concur.