STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO.  12 CO 8 |
| S.S.L.S., | ) | |
| | ) | |
| DOB: 03-03-10. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas
Court, Juvenile Division,
Case No. C201003462.

JUDGMENT:    Reversed and Remanded.

APPEARANCES:
For Appellant:    Attorney Carl J. King
101 East Sixth Street
Suite 303, Little Building
East Liverpool, OH  43920

For Appellee:    Attorney Tracey A. Laslo
325 East Main Street
Alliance, OH  44601

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: June 28,2013

[Cite as *In re S.S.L.S.*, 2013-Ohio-3026.]
DeGenaro, P.J.

{¶1} Appellant Nicholas Cody Gill appeals the January 30, 2012 judgment of the Columbiana County Court of Common Pleas, Juvenile Division, which, inter alia, granted custody of the parties' minor child SSLS to Mother, Appellee Amber Nicole Smith. On appeal, Father asserts that the trial court's allocation of parental rights and responsibilities was an abuse of discretion. He also argues that the trial court erred in its income determination for child support purposes and by failing to attach a child support worksheet to the judgment entry. Father's arguments are meritorious in part.

{¶2} Relative to allocating parental responsibility, because the parties were unmarried, pursuant to R.C. 3109.042 Mother was statutorily designated the residential parent only until such time as a trial court would make an initial allocation of custody. The motion filed by Father was not triggering a modification; rather an initial custody determination, which simply requires the court take into account the best interests of the child, pursuant to R.C. 3109.04(F)(1). However, in the trial court's judgment entry it included language that appeared to place a higher burden upon Father; requiring him to demonstrate that any harm from the proposed change would be outweighed by the advantages, part of the test embodied in R.C. 3109.04(E)(1)(a)(iii), the custody modification standard, which is inapplicable to this case. Because we cannot ascertain whether the trial court applied the correct standard, and because based on the particular facts and circumstances of this case the inclusion of the harm versus advantages language could have prejudiced Father, we exercise our discretion to remand.

{¶3} Regarding child support, the income determination was supported by the record, specifically Father's detailed testimony. Although the trial court properly ordered the parties to submit proposed child support worksheets, it erred by failing to adopt a child support worksheet as its own, which is required by law.

{¶4} Accordingly, the judgment of the trial court is reversed and remanded for further proceedings, including a redetermination of custody under the correct test, and a determination of child support based upon the custody decision, which must include a child support worksheet.

**Facts and Procedural History**

{¶5}   Mother and Father were never married but had one child, SSLS, born March 3, 2010.  When SSLS was born, both parents were approximately 18 years old, and SSLS resided with Mother who was the primary caregiver of the child.  This case came before the Columbiana County Juvenile Court on petition from the Columbiana County Child Support Enforcement Agency, seeking acknowledgement of its administrative paternity finding pursuant to R.C. 3111.02(B).

{¶6}   On November 15, 2010, the trial court issued a judgment entry certifying and adopting the administrative determination of parentage and child support issued by CCSEA as its own and ordered Father to pay $127.83 per month in support to Mother, inclusive of processing fee.  Upon Father's motion, he was granted companionship with SSLS, which was initially supervised for a transitional period.

{¶7}   On April 8, 2011, Father filed a multi-branch motion seeking reallocation of parental rights, specifically that he be named residential parent and legal custodian of SSLS.  He also requested termination of his child support obligation, establishment of a support obligation to be paid to him, modification of the tax dependency exemption, drug testing, a home investigation, and the appointment of a guardian ad litem.

{¶8}   On April 28, 2011, the trial court appointed a GAL, and imposed a standard order of visitation for the pendency of the proceedings.  There were some disputes regarding visitation during this time.

{¶9}   On January 23, 2012, the case came for hearing before the trial court regarding Father's motion for reallocation of parental rights.  Testimony was taken from the parties, the paternal grandmother, the paternal great-grandmother, the GAL, and an employee of the Columbiana County Humane Society (who testified about animal cruelty charges against the maternal grandfather, who resides in a trailer adjacent to Mother.)  There was also evidence admitted regarding the paternal grandfather's past rape conviction and status as a registered sex offender.  The GAL, who had issued several reports during the pendency of the proceedings, recommended that custody remain with Mother, despite some concerns regarding the paternal grandfather's history.  The GAL opined that Father had failed to take a substantially active role in SSLS's care and

support.

{¶10} On January 30, 2012, the trial court issued a judgment that: denied Father's motion for reallocation of parental rights, allocated the tax dependency exemption, ordered Father to obtain a high school diploma or GED within one year, and ordered Father to pay child support to Mother. With regard to the support, the trial court found, via imputing income, that Mother's gross income was $10,000.00 per year, and that Father's gross income was $30,000.00 per year. The trial court ordered the parties to submit proposed child support worksheets using those figures within 14 days. While the parties did so, no worksheet was included in the trial court's judgment entry.

### Allocation of Parental Rights and Responsibilities

{¶11} In his first of two assignments of error, Father asserts:

{¶12} "The trial court committed reversible error in its determination of parental rights and responsibilities. The trial court decision that harm would be caused by separating the child from her Mother and placing her in the custody of Father is not outweighed by the advantages of the proposed change of custody and not in the best interest of the minor child was an abuse of discretion and against the manifest weight of the evidence."

{¶13} Father asserts that the trial court abused its discretion by naming Mother the legal custodian of SSLS. As a threshold matter though, we have concerns about the language used by the trial court in its entry granting custody to Mother; it is difficult to ascertain whether the trial court applied the correct legal standard. Specifically, the trial court stated: "The Court finds that the harm that would be caused by separating [SSLS] from Mother [ ], and placing her in the custody of [Father] is not outweighed by the advantages of the proposed change of custody and not in the best interest of the minor child."

{¶14} Although the trial court did not cite a specific statute in its judgment, it appears the court may have applied, at least in part, the custody modification standard set forth in R.C. 3109.04(E)(1)(a)(iii) which provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶15}** However, this statute is inapplicable to the present case. Mother and Father were never married to one another; as the trial court correctly found, there had "been no prior adjudication or dispute between the parents regarding the child's custody." Instead, the controlling statute is R.C. 3109.042:

An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

**{¶16}** In light of this statutory language, the issue before the trial court here was an original custody determination, not a modification. Thus, when considering Father's motion for custody, the parties "stood on equal footing before the trial court as to who should be named the residential parent." *Francis v. Westfall*, 7th Dist. Nos. 03-JE-20, 03-

JE-21, 2004-Ohio-4543, ¶15. In making an original allocation of parental rights and responsibilities, the trial court must apply the best interest standard. *Id.* at ¶16, citing R.C. 3109.04(B)(1). There is no need for the trial court to find a change in circumstances or to balance the potential harm from the change with the advantages where the unmarried mother has had custody of the child not by prior judicial determination, but via operation of law. *Dunn v. Marcum*, 2d Dist. No. 08-CA-112, 2009-Ohio-3015, ¶7. In other words, where there has been no "prior decree allocating parental rights and responsibilities," R.C. 3109.04(E)(1)(a) is inapplicable to consideration of Father's motion for allocation of parental rights and responsibilities. *DeWitt v. Myers*, 2d Dist. No. 08-CA-86, 2009-Ohio-807, ¶14-16.

**{¶17}** There was no previous order with respect to custody to change; Mother was the residential parent only by operation of statute. R.C. 3109.042 dictates that the custody of SSLS was an original determination, with Mother and Father standing on equal footing when determining designation of the residential parent; Father did not have to prove the benefits outweighed the harm in order to prevail on his motion; he only needed to show that granting him custody was in the child's best interests.

**{¶18}** Here the trial court did apply the best interests test, but its inclusion of the additional harm versus advantages language gives us pause, because it could mean the trial court was placing an unnecessary burden upon Father. In some cases, this additional layer of analysis might constitute harmless error. However, based on the particular facts and circumstances of this case, namely, given how close the evidence was with respect to the parties' comparative "character, family relations, past conduct, earning ability, and financial worth of each parent," R.C. 3109.04(C), we conclude that Father could have been prejudiced. In the end, we simply cannot ascertain whether the trial court applied the correct standard based on the language used in the entry, and therefore out of an abundance of caution we exercise our discretion to remand.

**{¶19}** Accordingly, Father's first assignment of error is meritorious in part.

**Child Support**

**{¶20}** In his second and final assignment of error, Father asserts:

**{¶21}** "The trial court failed to calculate child support in its decision and attach to its decision a worksheet for the same. The trial court erred in imputing income to Father pursuant to R.C. 3119.01. The trial court erred in its finding that Father had an income of approximately $30,000.00 a year as the same was not supported by the evidence."

**{¶22}** "[A] trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough. *See Bergman v. Bergman,* 2d Dist. No. 25378, 2013-Ohio-715, ¶9; *Hall-Davis v. Honeywell, Inc.,* 2d Dist. Nos. 2008 CA 1, 2008 CA 2, 2009-Ohio-531, ¶35. Nevertheless, a trial court's discretion is not unfettered and the mandatory statutory child-support requirements must be followed in all material respects. *Sapinsley v. Sapinsley,* 171 Ohio App.3d 74, 2007-Ohio-1320, 869 N.E.2d 702, ¶8; *see also Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph two of the syllabus.

**{¶23}** This assignment of error has two parts, the first of which concerns the determination of Father's gross income. When computing child support payments, the trial court must first determine the parties' annual gross income. Gross income includes: the "total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and * * * and all other sources of income." R.C. 3119.01(C)(7).

**{¶24}** The trial court determined that Father's income was $30,000.00 per year. Contrary to Father's contentions, the trial court did not impute income to him. Instead, the trial court based its income determination on Father's testimony. Father earned approximately $55.00 per week working at his grandmother's pizza shop. During the hearing Father identified his W-2 from his employment at the pizza shop; however for

reasons unknown, it was not formally admitted into evidence. Father continued to testify that he had unreported income from other sources. On cross-examination, Father also gave detailed testimony that he was able to make $1,000.00 per week, averaged over the course of a year, in self-generated income by purchasing vehicles, repairing and/or updating them and then selling them for a profit. This amounts to a gross income of over $50,000.00 per year. But the trial court actually deviated *downward* from this figure, explaining:

> THE COURT * * *Uh sir I am going to peg you at about $30,000.00 a year. Your earning ability right now. You testified you can hustle make a thousand a week I don't think you can make a thousand per week.
>
> [FATHER]: It depends on the (interrupted)
>
> THE COURT: I know the weather and everything else. But I think if you really hustle you can come up with $30,000.00 a year.

**{¶25}** A potential problem with the trial court's income decision was that Father's self-generated income was not verified by documentation or electronic means pursuant to R.C. 3119.05(A) which provides both parents' "current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." This court has concluded R.C. 3119.05(A) places the duty on the parents to verify their respective incomes. *Ellis v. Ellis,* 7th Dist. No. 08 MA 133, 2009-Ohio-4964, ¶55, citing *In re Kohlhorst*, 3d District No. 2-06-09, 2006-Ohio-6481, ¶10.

**{¶26}** However, any error in the trial court's estimation of Father's income as $30,000.00 absent any documentation was invited by Father. "[U]nder the invited-error doctrine, 'a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.' " *McCarthy v. Lippitt*, 150 Ohio App. 3d 367, 2002-Ohio-6435, 781 N.E.2d 1023, ¶39 (7th Dist.), quoting *State ex rel. Beaver v. Konteh*, 83 Ohio St.3d 519, 521, 700 N.E.2d 1256 (1998). Here, Father testified that he makes

$1,000.00 in self-generated income per week that he does not report to the IRS, failing to provide any documentation.

**{¶27}** This is somewhat similar to the situation in *In re Kohlhorst, supra*. In that case, the appellant operated a business but failed to follow good accounting habits and failed to pay state and federal taxes at various times. For a particular year in question, appellant failed to verify his income pursuant to R.C. 3119.05(A) and the trial court estimated his income for that year based upon testimony and other evidence in the record. The Third District concluded that the trial court did not abuse its discretion in so doing. *Id*. at ¶12, citing *Smith v. Quigg*, 5th Dist. No. 2005-CA-002, 2006-Ohio-1495, ¶50 (where there was conflicting evidence of Father's income presented, father could not complain on appeal that the trial court erred, "because he invited any possible error by not submitting verification of his income as required by statute.") Accordingly, based on the above, the trial court did not abuse its discretion determining that Father's gross income for child support purposes was $30,000.00.

**{¶28}** Moving on to the second part of this assignment of error, Father complains the trial court erred by not including a child support worksheet with its judgment entry. At the end of the hearing and in its judgment entry, the trial court found Mother's income for child support purposes was $10,000.00, imputing income to her, and Father's income was $30,000.00. The trial court ordered the parties to submit proposed child support worksheets using those figures, within 14 days. Mother submitted her proposed worksheet the same day. The record does not demonstrate that Father submitted a proposed worksheet or that the trial court adopted Mother's worksheet or issued its own, prior to the time Father filed his notice of appeal.

**{¶29}** "When a court calculates child support, it is mandatory that the court use a worksheet identical to that statutorily provided in R.C. 3119.022. Thus, such worksheet must be completed and included in the record by the trial court." *Grenga v. Bonacci*, 7th Dist. No. 08 MA 59, 2008-Ohio-6369, ¶11, citing *Marker v. Grimm*, 65 Ohio St.3d 139, 142, 601 N.E.2d 496 (1992). However, "[t]he trial court's failure to complete its own worksheet is not erroneous so long as the court clearly adopts one of the parties'

worksheets." *Long v. Long*, 162 Ohio App. 3d 422, 2005-Ohio-405, 833 N.E.2d 809, ¶11 (3d Dist.), citing *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, ¶85-86 (7th Dist.). The trial court erred by failing to either complete its own worksheet or adopt one of the parties' worksheets. Accordingly, Father's second assignment of error is meritorious in part.

## Conclusion

**{¶30}** In sum, Father's arguments are meritorious in part. Relative to allocating parental responsibility, we cannot ascertain whether the trial court applied the correct legal standard based on the custody modification language it used in its judgment entry granting custody to Mother. Based on the particular facts and circumstances of this case, we cannot conclude this was harmless; Father could have been prejudiced.

**{¶31}** Regarding child support, the income determination was supported by the record, specifically Father's detailed testimony. Although the trial court properly ordered the parties to submit proposed child support worksheets, it erred by failing to adopt a child support worksheet as its own, which is required by law.

**{¶32}** Accordingly, the judgment of the trial court is reversed and remanded for further proceedings, including a redetermination of custody under the correct test, and a determination of child support based upon the custody decision, which must include a child support worksheet.

Donofrio, J., concurs.

Vukovich, J., concurs.