[Cite as *In re P.G.T.*, 2016-Ohio-3429.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| P.G.T. | ) | |
| D.O.B. 5/18/12 | ) | CASE NO. 14 CO 0034 |
| | ) | |
| BRANDON D. GOOD, SR. | ) | OPINION |
| | ) | |
| PLAINTIFF-RESPONDENT-APPELLEE | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| CHARLOTTE TRAGESER | ) | |
| | ) | |
| DEFENDANT-PETITIONER-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Appeal from Court of Common Pleas, Juvenile Division, Columbiana County, Ohio
Case Nos. C2012-0372 & C2012-0373

JUDGMENT:                                  Affirmed.

APPEARANCES:
For Plaintiff-Respondent-Appellee          Attorney Tracey Laslo
325 East Main Street
Alliance, Ohio 44601

For Defendant-Petitioner-Appellant         Attorney David Engler
725 Boardman-Canfield Road, Unit S-3
Youngstown, Ohio 44512

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: June 13, 2016

DeGENARO, J.

{¶1} This appeal filed by Charlotte Trageser, Mother, challenges the Columbiana County Juvenile Court's decision that awarded primary custody of the minor child to Brandon Good, Father. Mother's arguments regarding the telephone records, disqualification of counsel, and custody, are meritless and the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶2} On May 18, 2012, P.G.T. was born to Charlotte Trageser and Brandon Good.  Approximately five months later, Father filed a complaint for allocation of parental rights and responsibilities (or in the alternative Shared Parenting) and a motion for name change in the Columbiana County Juvenile Court. At the pretrial both Mother and Father were ordered to submit to a hair follicle drug screening by 4:00 pm that day, and a Guardian ad Litem was appointed. Father was also given supervised companionship time with the minor child on weekends.

{¶3} Father did not submit to the drug test and Mother filed a motion again requesting an order for Father to submit to a hair follicle drug test and an order terminating all companionship with the child. The juvenile court granted both of Mother's motions. Father filed a notice with the juvenile court stating that he attempted to get the screening done, however, the test administrator was on vacation and had limited availability due to the holidays. Father submitted to the drug test and requested the court to reinstate his visitation, which the court did.

{¶4} Father filed a proposed shared parenting plan. In the meantime Mother discharged her lawyer and retained new counsel. The GAL filed an interim report recommending standard visitation for Father. The juvenile court awarded Father standard visitation in accordance with the county's local rule of companionship.

{¶5} A merit hearing was held and evidence was presented. However, the matter was unable to be completed in the time allotted and was continued for further proceedings.  In the interim, Mother filed a motion requesting counsel for Father to be recused from representing him. She alleged that his counsel was using information obtained during a consultation Attorney Laslo had with her regarding obtaining a

divorce from her husband at the time. Attorney Laslo filed a reply denying any representation of Mother or any recollection of a consultation with her. The juvenile court found Mother lacked credibility and denied her motion.

{¶6} Mother's final attorney entered an appearance and promptly assisted her in filing an affidavit with the Supreme Court of Ohio to disqualify the juvenile court judge. As such, the previously scheduled hearing was stayed. Ultimately, the Supreme Court of Ohio found no basis was established to order the disqualification of the judge.

{¶7} The second day of the merit hearing was held and the juvenile court granted legal custody of the minor child to Father; Mother received standard visitation in accordance with the county's local rule of companionship. The minor child's last name was changed to Father's last name. Mother's income was imputed and she was ordered to pay Father child support.

**Telephone Records**

{¶8} In her first of six assignments of error, Mother asserts:

> The Trial Court Erred by Denying Appellant's Telephone Records To Be Admitted As Evidence In Support of A Motion to Disqualify Attorney Laslo As An Abuse of Discretion.

{¶9} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.,* 7th Dist. No. 12 CO 8, 2013-Ohio-3026, ¶ 22.

{¶10} Evid.R. 901 governs authentication:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a

finding that the matter in question is what its proponent claims.

{¶11} Mother argues that the juvenile court erred in denying her request to admit telephone records in support of her motion to disqualify Father's attorney. Father counters that the records were not relevant and/or not properly authenticated.

{¶12} The trial court did not abuse its discretion in excluding Mother's cellular telephone records as her testimony created confusion as to their authenticity and also, she failed to establish how they are relevant to the present matter.

{¶13} Mother testified that the phone records in question were obtained by her from AT&T and that they emanated from her cell phone. She indicated that she highlighted two separate numbers on the records which she testified were the numbers of Father's attorney's office and his attorney's cell phone. However later in the proceeding Mother testified that she had not called the numbers herself, but rather her father placed the respective calls; his testimony was not offered. Further, Attorney Laslo stated to the court that one of the highlighted numbers was not actually to her office.

{¶14} Additionally, Mother failed to establish how any information Father's attorney may have gained in July 2011 and September 2011 was relevant to the present matter. She testified that her first contact with Attorney Laslo occurred by phone in July of 2011 and was followed by an office visit in September of 2011, lasting 45 minutes. Mother was seeking advice regarding obtaining a divorce from her husband at the time, not Father. The minor child was not conceived in July of 2011. Mother alleges that she was a week pregnant during an alleged office visit in September. When pressed for answers as to what information Father's attorney had acquired from 2011 that impacted the custody proceeding herein, Mother gave no specific answer. Accordingly, Mother's first assignment of error is meritless.

## Disqualification

{¶15} In her second of six assignments of error, Mother asserts:

The Trial Court Erred by Denying Appellant's Motion to

Disqualify Attorney Laslo pursuant to Prof. Cond. Rule 1.9 and 1.6 as an Abuse of Discretion.

**{¶16}** Disqualification of an attorney is a drastic measure that should not be imposed unless it is absolutely necessary. *Spivey v. Bender,* 77 Ohio App.3d 17, 22, 601 N.E.2d 56 (6th Dist.1991). The trial court has wide latitude when considering a motion to disqualify counsel and is reviewed for an abuse of discretion. *Id.* "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.,* 7th Dist. No. 12 CO 8, 2013-Ohio-3026, ¶ 22.

**{¶17}** This court has applied a three-part test for disqualification of counsel due to a conflict of interest: "1) a past attorney-client relationship must have existed between the party seeking disqualification and the attorney he or she wishes to disqualify; 2) the subject matter of the past relationship must have been substantially related to the present case; and 3) the attorney must have acquired confidential information from the party seeking disqualification." *City of Youngstown v. Joenub, Inc.*, 7th Dist. No. 01–CA–01, 2001–Ohio–3401, ¶15, citing *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990).

**{¶18}** If there is no current or past attorney-client relationship, the motion to disqualify should be denied. *Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 260, 611 N.E.2d 873 (6th Dist.1992). However if the court determines that there is or has been an attorney-client relationship, the court must then determine whether a conflict of interest exists; only if a conflict exists need the attorney be disqualified. *Id.*

**{¶19}** It is well established that disqualification of an attorney "should not be based solely upon allegation of a conflict of interest." *Kitts v. U.S. Health Corp. of S. Ohio*, 97 Ohio App.3d 271, 275, 646 N.E.2d 555 (4th Dist.1994) The moving party has the duty of showing what the connection between the cases is and must provide some evidence that a need for the disqualification exists. *Phillips v. Haidet*, 119 Ohio

App.3d 322, 327, 695 N.E.2d 292 (3d Dist.1997).

**{¶20}** Mother made general allegations asserting that she had several telephone calls and paid a consultation fee of $65.00. Attorney Laslo disputes this and any knowledge of Mother. The juvenile court found that Mother lacked credibility. Mother waited over a year to raise this issue and did so approximately one month before the second day of merit hearing. Mother stated that she paid a consultation fee, but upon learning that Attorney Laslo doesn't charge a consultation fee, questioned her recollection of paying that fee. The juvenile court did not find "credible evidence that Mrs. Trageser has divulged to Attorney Laslo, by a prior meeting, any information regarding personal or other details relevant to the issues before the Court for determination and the Court, therefore, concludes that the allegations are untrue."

**{¶21}** Even assuming arguendo an attorney-client relationship was established, the second prong of the disqualification test requires that the subject matter of the past relationship must be substantially related to the present case. Mother asserts that her consultation with Attorney Laslo was in regards to a divorce with her husband at the time. She fails to argue or establish that the divorce consultation was in anyway connected to Father in the present matter.

**{¶22}** Mother failed to prove that she had a prior attorney-client relationship with Attorney Laslo. As such, she has failed to establish the first prong of the *Dana* test. The juvenile court did not abuse its discretion in denying Mother's motion to disqualify. Accordingly this assignment of error is meritless.

### Custody

**{¶23}** In her third of six assignments of error, Mother asserts:

The trial court erred in its decision to award Residential Parent and Legal Custodian, Child Support and Name Change to the Appellee as such is not supported by the evidence in the record as an Abuse of Discretion.

**{¶24}** It is well settled that a trial court is given broad discretion in its

determination of parental custody rights. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). A trial court's custody determination will therefore not be disturbed unless it involves an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.,* 7th Dist. No. 12 CO 8, 2013-Ohio-3026, ¶ 22.

**{¶25}** "Our threshold question is whether the trial court was ruling on a modification of custody or an initial custody determination. Generally, a natural father of a child born out of wedlock has equal standing with the mother to assert custody rights in an initial custody proceeding." *In re Nentwick*, 7th Dist. No. 00 CO 0050, 2002-Ohio-1560, ¶33 citing *In re Byrd*, 66 Ohio St.2d 334, 421 N.E.2d 1284 (1981), paragraph one of syllabus. "In such case, the court shall determine which parent shall have the legal custody of the child, taking into account what would be in the best interests of the child." *Byrd* at paragraph two of the syllabus. Father filed his complaint approximately five months after the child's birth and the juvenile court treated this matter as an initial determination.

**{¶26}** The statutory best interests factors within R.C. 3109.04(F)(1) are applicable to juvenile custody proceedings. *In re Bell,* 7th Dist. No. 04NO321, 2005–Ohio–6603, ¶ 37. These factors include, but are not limited to, the following: (a) the parents' wishes; (b) the child's wishes if the court has interviewed the child; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interests; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all relevant persons; (f) the parent more likely to honor and facilitate court-approved parenting time or companionship rights; (g) whether either parent has failed to make child support payments pursuant to a support order; (h) whether either parent or any member of their households has been previously convicted of certain criminal offenses involving children; (i) whether the residential parent or a parent subject to a

shared parenting decree has continuously and willfully denied the other's right to parenting time in accordance with a court order; and (j) whether either parent has or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

**{¶27}** There is no statutory mandate that a trial court separately address each of the best interests factors and a court is presumed to have considered these factors absent evidence to the contrary. *In re Henthorn,* 7th Dist. No. 00-BA-37, 2001-Ohio-3459, *3. Although the juvenile court's judgment entry does not specifically discuss the enumerated factors, we can presume from the record that the court did consider the best interest factors. *Henthorn*, *supra.*

**{¶28}** As to the first factor, the wishes of the parents, both parents sought custody. The second factor is not relevant due to the age of the child and the juvenile court did not interview her.

**{¶29}** Concerning the third factor, there was testimony regarding both parents' family structure and the minor child's interaction with family members. The juvenile court noted that the minor child was the third biological child for both Mother and Father, who was expecting a fourth child with another woman. Father has custody of his two other children, as does Mother. Father testified that all of his children "get along great" and that they play, laugh, and have fun. The minor child has a relationship with his mother, father and sister. Father testified that he takes care of P.G.T. when he has her and if he is working that his mother, father and girlfriend assist in childcare. Mother testified that her children and stepson get sad when they are apart from P.G.T. and they all have a loving relationship. Her husband, mom and dad help support her in raising P.G.T.

**{¶30}** As to the fourth factor, the court noted in its judgment entry that even though the child was one year of age, Mother reported that she had previously enrolled the child in preschool/day care and indicated her intent to continue that enrollment.

**{¶31}** Regarding the fifth factor, the mental and physical health of all relevant persons, Mother testified that she has arthritis in her hands. Father testified that he

has "good" mental and physical health. Father testified that P.G.T. had been "sick a few times" having upper respiratory issues and ear infections. Mother testified that P.G.T. was evaluated for a "rapid heartbeat", had surgery on her ears, had blocked tear ducts, sinusitis and chronic conjunctivitis in her eyes due to allergies. On day two of the merit hearing, Mother testified that P.G.T. had asthma, pneumonia, an upper respiratory infection and the flu. Mother maintained throughout the proceedings that P.G.T. is smart, well-developed and happy.

**{¶32}** As to the sixth factor, the juvenile court specifically found that Mother has mostly complied with permitting visitation between the minor child and Father, however, based upon the testimony and evidence presented, that Father would be the parent more likely to foster a relationship of respect between the child and Mother.

**{¶33}** The last four factors regarding child support payments, criminal offenses involving children, shared parenting visitation and establishing a residence outside of Ohio were not at issue.

**{¶34}** Mother argues that the juvenile court ignored any testimony or evidence that was favorable to her and found only positive points regarding Father. The trial court was in the best position to weigh the credibility of the witnesses and evidence presented. Mother fails to acknowledge that her own testimony reduced her credibility at several points in the proceeding. There were numerous examples of Mother's testimony being exaggerated, unbelievable or simply untruthful: 1) Mother stated that she had consulted with Father's attorney and paid a consultation fee, however, after learning that no consultation fee is charged by this attorney, she stated she didn't pay one; 2) Mother testified that Father has "never" provided financially and medically for the child, specifically citing that P.G.T. lost an earring and Father refused to replace it; 3) Mother testified that P.G.T. has to see a doctor after "every other visit" with Father.

**{¶35}** The juvenile court cautioned Mother about her manner of testifying on several occasions:

"Ma'am just answer the question that is asked."

"Wait a minute. Ma'am you need to answer the question directly that is proposed to you."

"Ma'am wait a minute. This isn't rocket science, she is trying to figure out how often you said that you take the child after every visit, then you said after every other, the child visiting regularly and now when she tries to nail you down you start something else. You need to listen carefully to the question. And answer that directly, we went through this the first time you testified."

"When you are asked a question I need you to, I mean you want to qualify everything, to deny it and then you finally sneak your way back to half admitting it. Just tell it like it is the first time. Directly to the question. This will be a lot clearer record."

"You know, again you will have your opportunity and you have had. Ok. Do you understand what I said? You said two different things there. Because you out right denied then you come back to, sounds like half. Ok those are two different responses."

{¶36} As this Court has previously stated, it would be helpful for the juvenile court to specifically refer to the factors set out in R.C. 3109.04 when making custody determinations. *Henthorn, supra.* However, evidence was presented relating to all of the relevant best interest factors. The court stated that it received testimony and exhibits during the 1.5 day merit hearing, reviewed the reports of the GAL who was subject to cross examination, and reviewed the DNA and drug testing results. The juvenile court appears to have considered all of the factors even though it did not discuss each factor specifically in its judgment entry. Mother had serious credibility issues which the trial court noted and cautioned her about. Accordingly, the juvenile

court did not abuse its discretion in awarding custody of P.G.T. to Father.

{¶37} Mother also argues that the juvenile court erred by ordering child support and changing the minor child's name. Regarding the name change, the Supreme Court of Ohio held:

> 1. Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child.

> 2. In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Courts should consider only those factors present in the particular circumstances of each case.

*Bobo v. Jewell*, 38 Ohio St.3d 330, 528 N.E.2d 180 (1988), syllabus.

{¶38} The juvenile court held that it was in the best interest of the minor child to grant Father's request for the name change. While the juvenile court did not provide specific reasons, it is clear from the record that there are several factors which support this conclusion, including: Father was awarded primary custody of the minor child and would be living a majority of the time with his family, all of which used his surname; the child was very young and had not identified with a particular

surname; the child was not of an age to express a preference; there would be little inconvenience in changing the child's surname due to the child's age; and also, Mother had remarried and assumed her new husband's surname, as such Mother did not share the surname that she wished the minor child to keep. Accordingly, the juvenile court did not abuse its discretion in granting Father's request to change the minor child's last name. Mother's argument is meritless.

**{¶39}** Mother also alleged in this assignment of error that the juvenile court erred in awarding Father child support, but she provides no argument in her brief, instead focusing on the decision to award custody to Father and the name change. As such, it will not be addressed herein.

### Imputed Income

**{¶40}** In her fourth of six assignments of error, Mother asserts:

> The Trial Court erred in finding that Mother's imputed income of $18,720 a year for purposes of calculating child support was not supported by the evidence in the record and is in contravention of R.C. 3119.01(C)(11) was an abuse of discretion.

**{¶41}** "In order to calculate child support, the trial court must determine the parent's income." *Schley v. Gillum*, 5th Dist. No. 11 CAF 10 0098, 2012-Ohio-2787, ¶13. "[T]he amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus.

**{¶42}** A trial court has discretion in the calculation of child support and the appellate court will not disturb a child support order absent a showing of an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. "An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.*, supra.

**{¶43}** The juvenile court did not abuse its discretion in imputing an annual

income of $18,720 to Mother. Mother has a managing beautician license and is a certified EMT. She previously worked as a manager at Best Cuts in Salem, Ohio making from $9 to $26 per hour. She currently has a managing beautician license but states she cannot cut hair 12 hours a day due to arthritis. However, she testified that she is also a certified (national and state) EMT and if she worked she could start at $8.50 to $10 per hour.

**{¶44}** The juvenile court judge found that Mother "chooses not to work for the stated reason of spending time with her children." This finding was supported by Mother's testimony that she didn't work to spend time with the children. Mother did not lack day care or assistance as she testified that her husband, mom, and dad help support her in raising the child.

**{¶45}** A review of Mother's brief reveals that her argument is focused on the fact that the juvenile court did not make an express finding that she was voluntarily unemployed or underemployed. She contends that the court needed to make this explicit finding. Father argues that the findings made by the juvenile court are sufficient.

**{¶46}** There is a split in the districts as to whether the express words of "voluntarily unemployed" or "voluntarily underemployed" need to be stated. In *Drummer v. Drummer*, 3d Dist. No. 12–11–10, 2012–Ohio–3064, the trial court imputed income to Father, William Drummer, without making express findings. The Third District rejected his argument that the words "voluntarily unemployed" or "voluntarily underemployed" had to be stated:

> *** William contends that the trial court committed reversible error when it did not expressly find that he was either voluntarily unemployed or underemployed. Though the better practice would be to expressly find that the parent is voluntarily unemployed or underemployed, we disagree with William's contention in light of this court's precedent in *O'Connor v. O'Connor,* 184 Ohio App.3d 538, 921 N.E.2d 700, 2009–Ohio–5436 (3d Dist.). In *O'Connor,* the trial court did not expressly find

that the parent was voluntarily unemployed or underemployed for purposes of imputing potential income to the parent. Nevertheless, this court explained that the absence of an express finding of voluntary unemployment or underemployment is not reversible error where a reviewing court is capable of inferring such a finding from the record. *O'Connor* at ¶ 11; *see also Wheeler v. Wheeler,* 6th Dist. No. OT–04–025, 2005–Ohio–1025, ¶ 26 (no statutory requirement that the trial court's finding concerning voluntary unemployment or underemployment be express); *but see Collins v. Collins,* 9th Dist. No. 10CA0004, 2011–Ohio–2087, ¶ 36 (trial court's finding concerning voluntary unemployment or underemployment must be express).

*Drummer*, ¶ 27.

**{¶47}** Other than calling the $18,720 "heavy handed" and arguing that the figure is based on speculative income, Mother does not provide any evidence that the juvenile court abused its discretion in arriving at the figure of $18,720. Mother's own testimony supports the figure. She is certified as an EMT on a national and state level and testified that she could start at $8.50 to $10 per hour. The juvenile court apparently used $9.00 and based the figure on a 40 hour work week for 52 weeks which equals $18,720. This computation was entirely reasonable and within the juvenile court's discretion. Accordingly, Mother's fourth assignment of error is meritless.

### Child Support Worksheet

**{¶48}** As both Mother's fifth and six assignments of error are interrelated they will be discussed together. Mother asserts:

The trial court erred when it filed a defective child support worksheet when it failed to include Father's child support on Line 8 of the worksheet he receives for his 2 other children as an abuse of discretion.

The trial court erred when it filed a defective child support worksheet when it failed to verify income as required by R.C. 3119.05(A) as an abuse of discretion.

**{¶49}** A juvenile court must comply with Chapter 3119, among other statutes, when it makes or modifies a child support order. *Grenga v. Bonacci*, 7th Dist. No. 08 MA 59, 2008–Ohio–6369, ¶11. A trial court has discretion in the calculation of child support and the appellate court will not disturb a child support order absent a showing of an abuse of discretion. *Pauly*, supra. "An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *In re S.S.L.S*, supra.

**{¶50}** Mother contends that the juvenile court erred in calculating child support because it failed to include child support received by Father for his other two children. Father responds that though there is a child support order, he doesn't actually receive the support.

**{¶51}** Regarding Father, there was not any direct testimony that Father received any child support payments. On the financial affidavit he did not list any support received on Line 8. Regarding Mother, her financial affidavit listed monthly support received of "290.00 for Faith when Father pays."

**{¶52}** Mother's contention that Father receives child support is not supported by the record, nor was it raised or developed at trial. Mother had ample opportunity to cross-examine Father on his financial affidavit or to elicit testimony regarding any financial support he received. She cannot raise this issue for the first time on appeal. "A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue." *State v. Peagler*, 76 Ohio St.3d 496, 501, 1996-Ohio-73, 668 N.E.2d 489.

**{¶53}** Mother also argues that the trial court erred when it failed to verify her income. She argues that the court was mandated to review financial documents to determine her income. As previously discussed in the fourth assignment of error,

Mother's income was imputed to her based upon her testimony that she is certified as an EMT on a national and state level and testified that she could start at $8.50 to $10 per hour. The trial court apparently used $9.00 and based the figure on a 40 hour work week for 52 weeks which equals $18,720. There would be no documentation to review as she was voluntarily unemployed and income was imputed to her. Accordingly Mother's fifth and sixth assignments of error are meritless.

**{¶54}** As all of Mother's arguments are meritless, the judgment of the juvenile court is affirmed.

Donofrio, P. J.,

Waite, J.,

APPROVED:

_____

Mary DeGenaro, Judge