OPINION
{¶ 1} Plaintiff-appellant David DeWitt appeals from a judgment awarding custody of his two children to the children's mother, defendant-appellee Melissa Myers. DeWitt argues that the trial court erred in awarding custody of both children to their mother because the court incorrectly applied R.C. 3109.04(E)(1)(a), when no prior decree had *Page 2 
been issued regarding custody of the children. We conclude that DeWitt's argument has merit. Moreover, we conclude that the trial court was overly deferential to the magistrate's findings of fact, to the extent that the court failed to conduct an independent review of the case as required by Civ. R. 53(D)(4)(d). Therefore the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 2} DeWitt and Myers lived together for twelve years and have two children, a fourteen-year-old son, D.D., and a six-year-old daughter, A.D. Myers also has two older children, a sixteen-year-old daughter, L.C., and a seventeen-year-old son, B.C. In 2002, although the couple still lived together, Myers obtained a child support order that, in accordance with R.C. 3109.042, recognized her as the residential parent and legal custodian of D.D. and A.D.
 {¶ 3} One morning in June, 2004, Myers found DeWitt asleep with his hand in L.C.'s underwear. The following week, Myers ordered DeWitt to move out. She did not report the incident at that time, because L.C. denied any abuse. D.D. moved out with DeWitt, while A.D. continued to live with Myers, although she spent a large portion of her time with her father and his family. No court order was sought regarding custody or visitation of either child. DeWitt also maintained contact with L.C, mostly when L.C. visited at his mother's home. Myers even allowed L.C. to visit DeWitt in his home on several occasions.
 {¶ 4} In May, 2007 Myers found A.D. in a closet, engaged in inappropriate touching with a friend. Myers reported the incident to Children's Services. Soon after, *Page 3 
L.C. told her mother that DeWitt had come into her room at night to fondle her on about twenty occasions when she was between the ages of six and twelve.
 {¶ 5} Myers reported the alleged abuse of L.C. to Children's Services. When she told DeWitt that she was not going to allow A.D. to return to his home, he became very angry and threatened her. Myers obtained an ex parte civil protection order against DeWitt on behalf of herself, B.M., L.M., and A.D. A police investigation was begun regarding the sexual abuse allegations, but no criminal charges were filed. A hearing on a final protection order was continued several times. In the meantime, on the advice of Children's Services, Myers refused to let DeWitt see A. D. Myers also severely restricted contact between A.D. and her paternal grandmother, who had been providing daycare for the children since their birth. Myers made other arrangements for A.D.'s care, claiming that A.D. needed more socialization than preschool could provide.
 {¶ 6} DeWitt filed a motion for legal custody of both D.D. and A.D. While the motion was pending, the trial court granted DeWitt supervised visits with A.D. Despite an August, 2007 agreed entry granting Myers unrestricted visitation with D. D., she never exercised unrestricted visitation. In fact, she denied that she had been granted visitation with D.D.
 {¶ 7} Hearings on the protection order, custody, and visitation were conducted in November, 2007 and April, 2008. At the first hearing the Guardian ad Litem recommended custody of D.D. to DeWitt and custody of A.D. to Myers with liberal, unsupervised visitation. Despite his awareness of the sexual abuse allegations, the Guardian ad Litem did not address the issue with L.C. when he interviewed her.
 {¶ 8} Following the hearing, the magistrate ordered the Guardian ad Litem to file *Page 4 
a supplemental report. Without any further interviews or investigation, the Guardian ad Litem filed a supplemental report, wherein he continued to recommend custody of D.D. to DeWitt and custody of A.D. to Myers and unsupervised visitation between D.D. and Myers, but he recommended supervised visitation between A.D. and her father.
 {¶ 9} The Guardian made his recommendations despite the fact that Myers had allowed unrestricted visitation between DeWitt and A.D. for three years after she had forced DeWitt to leave the home, claiming that he had abused L.C., and despite the fact that Myers testified that she had no objection to continued unrestricted visitation between DeWitt and their daughter. At no time had the Guardian ad Litem ever observed any visits or interaction between A.D. and her father. The recommendation was made solely because the Guardian ad Litem found L.C.'s testimony to be credible. Notably, the only testimony that the Guardian ad Litem listened to was that of L.C.
 {¶ 10} DeWitt denied ever sexually abusing L.C. He called several character witnesses on his behalf. A neighbor testified that, even knowing of the allegations against DeWitt, she felt comfortable letting her three-year-old daughter and ten-year-old son spend time with him. DeWitt's mother, brother, and two cousins testified to the closeness of DeWitt's relationship with his children. None of them had ever seen evidence of abuse of any kind. DeWitt also called to the stand an employee of the visitation center who had supervised several visits between DeWitt and his daughter. She saw no evidence of fear on the part of A.D.; she believed that father and daughter enjoyed each other's company.
 {¶ 11} The magistrate awarded custody of both D.D. and A.D. to Myers. He granted visitation between DeWitt and both children, but ordered that visitation with A. D. *Page 5 
be supervised at all times. DeWitt filed objections to the magistrate's decision, and a hearing was held before the trial court, wherein the parties merely stood upon their written memoranda. The court overruled the objections and adopted the magistrate's decision. DeWitt appeals. The trial court granted a stay during the pendency of this appeal.
 II {¶ 12} DeWitt's sole assignment of error is as follows:
 {¶ 13} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT ORDERED THAT MELISSA SHOULD BE THE CUSTODIAL PARENT OF BOTH CHILDREN."
 {¶ 14} DeWitt claims that the trial court erred in granting legal custody of his children, D.D. and A.D., to their mother, Myers. The parties' arguments center on the applicability of R.C. 3109.04(E)(1)(a), DeWitt arguing that the statute is inapplicable, because there was no prior court decree awarding custody, and Myers arguing to the contrary. We conclude that there was no prior decree issued awarding custody, and that R.C. 3109.04(E)(1)(a) is therefore not applicable. Moreover, we conclude that the trial court failed to conduct an independent review as required by Civ. R. 53, instead being overly deferential to the magistrate's findings of fact, necessitating the reversal of the judgment.
 {¶ 15} We first consider the applicability of R.C. 3109.04(E)(1)(a), which states: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior *Page 6 
decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent * * *, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child * * * ." The use of the phrase "prior decree allocating parental rights and responsibilities" indicates that there was a choice before the trial court regarding who should be the children's legal custodian. That is not the case here.
 {¶ 16} Although there is, in fact, an entry from December, 2002, awarding child support, the issue of custody was neither raised nor litigated. The trial court simply recognized the statutory presumption of Myers as the custodial parent pursuant to R.C. 3109.042. Because there has been no "prior decree allocating parental rights and responsibilities," R.C. 3109.04(E)(1)(a) is inapplicable to consideration of DeWitt's motion for custody of his children.
 {¶ 17} We next turn to the trial court's review of the magistrate's recommendation. Upon the filing of objections to a magistrate's decision, Civ. R. 53(D)(4)(d) requires a trial court to make a thorough, independent analysis of the issues and to apply appropriate rules of law. See, e.g., Reese v. Reese, Union App. No. 14-03-42, 2004-Ohio-1395;Moore v. Moore, Montgomery App. No. 19110, 2002-Ohio-3652, citingRammel v. Rammel (May 5, 1997), Montgomery App. No. 15887. In conducting that independent analysis, the trial court cannot simply defer to the magistrate's findings of fact. Should the trial court conclude that it does not have sufficient information with which to make the necessary factual findings, the court must hold further hearings or return the case to *Page 7 
the magistrate. Civ. R. 53(D)(4)(b). An independent review was lacking in this case.
 {¶ 18} The relevant portion of the trial court's judgment entry reads as follows:
 {¶ 19} "The Court finds that the magistrate concluded that the father of the children had abused a sibling. It is most difficult for the Court to review the credibility of witnesses that testified before the magistrate. Even a review of the transcript allows this Court to read and hear words that were spoken from the witness stand, but not to judge the credibility of the speaker. It is clear from the transcript of the proceedings that there was ample evidence to allow the magistrate to conclude that the father had committed abuse. The Court concludes that the magistrate's findings were supported by evidence from multiple sources and that those sources offered credible and reasonable testimony.
 {¶ 20} "The Court finds that the testimony presented to the magistrate was significantly in conflict. It is difficult to find that the father should not be the custodian of his son, when even the mother indicated through her testimony that she thought that the father could be and was a proper custodian for the 13-year-old boy. Nevertheless, the magistrate concluded that there was ample reason to find that the mother could and would meet the child's needs better than the father.
 {¶ 21} "A review of the transcript causes the Court to conclude that the findings of the magistrate were appropriate and well supported by the evidence * * * ."
 {¶ 22} The language of the court's entry reveals that, despite reservations, the trial court accepted the magistrate's findings of fact as true because there was evidence in the transcript to support those findings. In fact, the trial court deferred to the factual findings of its magistrate to a degree ordinarily associated with an appellate review standard, which is incompatible with the de novo review that Civ. R. 53(D)(4)(d) requires. *Page 8 
"The trial court errs when it employs an appellate standard of review in ruling on objections to the decisions of its own magistrate, because an appellate court is then prevented from conducting an appropriate review of the discretionary choice the trial court made when it adopted its magistrate's decision. Reversal and an order of remand for a proper review are then required." Quick v. Kwiatkowski, Montgomery App. No. 18620, 2001-Ohio-1498, citations omitted. Accordingly, DeWitt's assignment of error is sustained.
 {¶ 23} We sympathize with the trial court's perceived difficulty in determining which of conflicting testimonies to credit when it must do so based upon a written transcript. Nevertheless, that is the duty of the trial court when an objection based upon credibility has been filed to the magistrate's decision. If the trial court concludes that it cannot make the credibility determination based upon the written transcript, then it must conduct a hearing at which it takes the testimony of the conflicting witnesses, at least, to resolve the credibility issue. That an issue of credibility may, at least in theory, be resolved without live testimony is attested to in State v.Calhoun (1999), 86 Ohio St.3d 279, 714 N.E.2d 905, first paragraph of syllabus.
 III {¶ 24} DeWitt's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 BROGAN and GRADY, JJ., concur. *Page 1