[Cite as *A.A. v. S.H.*, 2014-Ohio-4101.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

A.A.

       Plaintiff-Appellant

v.

S.H.

       Defendant-Appellee


Appellate Case No. 2014-CA-37

Trial Court Case No. 2009-JUV-384

(Juvenile Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of September, 2014.

. . . . . . . . . . .

JEFFREY D. SLYMAN, Atty. Reg. #0010098, 575 South Dixie Drive, Vandalia, Ohio 45377
     Attorney for Plaintiff-Appellant

ERIC A. STAMPS, Atty. Reg. #0071176, Stamps & Stamps, 3814 Little York Road, Dayton, Ohio 45414
     Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FAIN, J.

**{¶ 1}** Plaintiff-appellant A.A. appeals from a decision of the trial court designating appellee S.H. as the residential parent and legal custodian of the parties' minor child. A.A. contends that the trial court erred by failing to decide whether a change in circumstances occurred prior to deciding to modify custody. She further contends that the evidence does not support the trial court's determination that awarding custody to S.H. is in the best interest of the child.

**{¶ 2}** We conclude that this case involved an initial custody determination, and therefore the trial court properly declined to determine whether a change in circumstances had occurred. We further conclude that there is competent, credible evidence in the record to support the trial court's best interest of the child determination.

**{¶ 3}** Accordingly, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

**{¶ 4}** The parties had one child together, K.H., who was born in 2008. The parties, who were not married, lived together at the time of birth and for approximately two years thereafter. In July 2009, the Clark County Department of Job and Family Services, Child Support Enforcement Services (CSEA) brought an action to determine parentage on behalf of A.A. That action was dismissed without prejudice later that same year.

**{¶ 5}** On November 11, 2012, CSEA issued an Administrative Order - Establishment of Paternity under Case No. 7070924316. The Administrative Order stated that the results of the genetic testing performed on K.H., S.H. and A.A. indicated that there was a probability of 99.99% that S.H. was the father of K.H. Pursuant to R.C. 3111.46, the Administrative Officer found that S.H. was the natural father of K.H.

{¶ 6}   In December 2012, CSEA filed an Application for Order of Support, Health Insurance, Repayment of Necessaries and Recoupment of Birthing Costs.   Due to problems with effecting service upon S.H., a hearing on child support issues was not held until April 30, 2013. On May 6, 2013, following the hearing, the trial court entered an order requiring  S.H. to pay child support in the sum of $50 per month retroactive to the date the application for support was filed.   The order did not make mention of custody or visitation.   An entry adopting and affirming the magistrate's decision was entered.

{¶ 7}   In June, A.A., the child, and S.W., whom A.A. began dating in July 2012, moved to Texas.   S.H. did not find out about the move until he found A.A.'s apartment empty and learned through family that she had moved.   On August 27, 2013, S.H. filed a complaint for legal custody.

{¶ 8}   The custody hearing was held in February 2014.   The trial court held that it did not need to determine whether a change in circumstances had occurred, because there had been no prior custody determination.   The trial court designated S.H. as residential parent and legal custodian of the child.   A.A. was granted visitation.   A.A. was not ordered to pay child support. A.A. appeals.

## II.   Because There Was No Prior Custody Order, the Trial Court Was Not Required to Determine Whether there Was a Change of Circumstances

{¶ 9}   A.A.'s First Assignment of Error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING THE APPELLEE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF

THE PARTIES' MINOR CHILD BY FAILING TO PROPERLY APPLY RELEVANT SECTIONS OF CHAPTER 3109 OF THE REVISED CODE.

{¶ 10}   A.A. contends that the trial court did not apply the correct legal standard in determining custody.   Specifically, she claims that the May 2013 support order was a "judgment in a paternity action," and therefore constituted a prior determination of custody.   Brief, p. 4. She argues that the trial court was required to find, pursuant to R.C. 3109.04(E)(1), that there had been a change in circumstances before it could modify custody.   Alternatively she argues that "although there was no express custody or visitation order, there was an implied order by virtue of the fact that [S.H.] had been ordered to pay child support after the determination of paternity." Brief, p. 5.   She cites *In re Yates*, 18 Ohio App.3d 95, 481 N.E.2d 645 (10th Dist. 1984) for the proposition that a judgment in a paternity action has the same effect as a prior determination of custody.

{¶ 11}   In an initial custody determination, a trial court must determine the best interest of the child.   R.C. 3109.04(B)(1).   However, in a request for modification of a prior custody order, R.C. 3109.04(E)(1) requires that a trial court find a change in circumstances before determining whether the best interest factors merit a modification.

{¶ 12}   A.A. argues that *Yates* is dispositive of the issue of whether the March 2013 support order constitutes a prior custody determination.   In *Yates*, paternity was established by an action to determine the father and child relationship.   *Id.* at 96.   The child continued to reside with the mother following that determination.   *Id.*    Thereafter, the father filed a custody action.  *Id.*   The Court of Appeals held that "while there had been no express judicial grant of custody to the mother of an illegitimate child, her legal custody was recognized by implication in the

judgment of the prior paternity action." *Id.* Accordingly, the appellate court held that in determining whether to grant custody to the father, the trial court was required to first determine whether there had been a change in circumstances pursuant to R.C. 3109.04(B)(1). *Id.* This court has agreed with that analysis. *See, Lucas v. Estes*, 2d Dist. Montgomery No. 10970, 1989 WL 13529, * 1-2 (Feb. 13, 1989). More recently, however, we have held the change of circumstances test inapplicable in the absence of a prior judicial decree regarding custody or paternity, even if child support and visitation have been previously ordered by a court. *DeWitt v. Myers*, 2d Dist. Clark No. 08-CA-86, 2009-Ohio-807; *Dunn v. Marcum*, 2d Dist. Clark No. 08-CA-112, 2009-Ohio-3015.

{¶ 13} In this case, paternity was determined administratively, pursuant to R.C. 3111.46(A).[1] CSEA's administrative order finding that a father and child relationship exists between S.H. and K.H. was issued on November 30, 2010, and notice was given pursuant to R.C. 3111.48. Neither parent filed an objection thereto. Thus the order became final thirty days thereafter. R.C. 3111.49.

{¶ 14} Thereafter, CSEA filed its court action for support. Visitation and paternity were not issues raised in that action. In its May 2013 support order, the magistrate noted that paternity had already been administratively established. The magistrate's order did nothing other than decide issues of child support.

{¶ 15} The support action filed by CSEA on behalf of A.A. was not a complaint to determine the existence of a father and child relationship; that fact was already established by virtue of the administrative order. The magistrate's support order was was not a custody

---

[1] The trial court incorrectly stated that the magistrate's 2013 support order established paternity.   Dkt., p. 74.

determination; the decision did not address any issue other than support. Thus, we conclude that there was no prior judicial allocation of custody.

{¶ 16} Nor do we conclude that an administrative finding of paternity is the functional equivalent of a judicial finding of paternity. While the agency, following the issuance of an administrative order establishing the father and child relationship, may issue support orders pursuant to R.C. 3111.81, it has no statutory authority to determine custody. In such administrative cases, the mother remains the residential parent and legal custodian of the child by operation of law until such time as a trial court orders otherwise. R.C. 3109.042. In circumstances where an unwed mother's custody arises by operation of law rather than by virtue of a judicial decree of custody or paternity, any subsequent complaint for custody is to be treated as an initial custody determination, without need of finding a change in circumstances. *Dunn*, *supra*.

{¶ 17} The trial court herein found that there had been no prior adjudication of custody, so that it did not need to find a change in circumstances in order to grant custody to S.H. We agree. Until S.H. filed the complaint for custody that is the subject of this appeal, neither party sought or received a court order recognizing or assigning custody.

{¶ 18} We conclude that there was no prior determination of custody. Therefore the trial court did not err in failing to determine whether there had been a change in circumstances as required by R.C. 3109.04(E)(1) and by instead applying the best interest test set forth in R.C. 3109.04(B)(1) for initial determinations of custody.

{¶ 19} The First Assignment of Error is overruled.

**III.   The Trial Court Did Not Abuse its Discretion in Finding that the**

**Child's Best Interests Supported an Award of Custody to the Father**

{¶ 20}   The Second Assignment of Error asserted by A.A. is as follows:

THE TRIAL COURT'S APPLICATION OF THE "BEST INTEREST TEST" AND DESIGNATION OF PARENTAL AND CUSTODIAL RIGHTS TO APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21}   A.A. contends that the evidence does not support a finding that awarding custody to S.H. is in the best interest of the child.

{¶ 22}   R.C. 3109.04(F)(1) provides a non-exclusive list of factors to consider when determining the best interest of a child.   Those factors are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 23} Obviously both parents wish to be awarded sole custody of the child. The trial court did not interview the child, who was five at the time of the hearing. The Guardian Ad Litem appointed to represent the child's interests indicated that the mother should have custody. However, the GAL was not aware that A.A. had not allowed S.H. to exercise visitation at Christmas. Furthermore, the GAL had not met with either A.A. or her fiancé, and had not visited their residence. Finally, the GAL appeared to believe, incorrectly, a finding of harm or detriment to the child had to be made prior to awarding custody to S.H. The trial court did not follow the GAL's recommendation. We conclude that its failure to do so does not constitute an abuse of its discretion.

{¶ 24} The trial court found both parents were actively involved with raising the child

and that the child was bonded to both parents as well as to members of both parents' families. The parties exercised approximately equal parenting time with the child from birth until February 2013, when S.H. and W. had a verbal confrontation.[2] From then until A.A. moved to Texas, S.H. had visitation with the child two to three days per week, with two overnight visits. There is evidence that the child is bonded with extended family members of both families. The trial court found that the majority of the child's extended family lives in Ohio.

{¶ 25} The evidence demonstrates that S.H. is in substantial compliance with his support obligation.

{¶ 26} The trial court found that the child is not adjusting well to his current school, based upon evidence that he was having difficulty with, and may need to repeat, kindergarten. The trial court further found that the child was well-adjusted to his home and community in Ohio and that there was no evidence presented on his adjustment to his home and community in Texas. There is evidence that S.H. has steady employment and housing. Conversely, A.A. is not employed and is expecting her third child.

{¶ 27} The trial court found that S.H. is "far more likely to honor and facilitate Court approved parenting time rights or visitation and companionship rights for [A.A.] than she would for him." Dkt., p. 82. The trial court further found that A.A. has wilfully denied visitation despite a court order.

{¶ 28} There is evidence in the record that on December 18, 2013, the trial court issued an order granting S.H. visitation with the child from December 26 through January 1, 2014. S.H. drove to Texas and attempted to exercise the visitation. W. was present at the residence.

---

[2] S.H. was incarcerated for a period of time in 2010 and 2011. However, the record is not clear on the length of the incarceration.

He informed S.H. that A.A. and the child were not home. S.H. asked W. to call A.A.; W. refused. S.H. left the premises. After eating, he returned to the premises approximately 30 minutes later. At that time W. and two other men appeared. W. told S.H. to return to Ohio. S.H. contacted the police, but was unable to secure visitation. Thereafter he returned to Ohio. A.A. admitted that she had received a copy of the order from S.H.'s attorney prior to the visitation date, but claimed that she did not receive a copy from the court until December 28. There is also evidence that A.A. and the child were in Ohio for over a week before the custody hearing, but A.A. did not notify S.H. of that fact and made no offer of visitation. She also appeared reluctant to allow visitation following the hearing, despite the trial court's order that she permit S.H. to spend time with the child. She further admitted that she did not believe she had an obligation to facilitate a relationship between the child and S.H.

{¶ 29} There is evidence in the record that S.H. has a criminal history, but the trial court found he has actively worked on addressing that issue and has, since his incarceration, held a job and housing without legal trouble.

{¶ 30} Finally, the trial court found that A.A. and W. moved to Texas primarily to restrict visitation between S.H. and the child as well as to avoid W.'s child support obligations to his four children residing in Ohio.

{¶ 31} The standard used to review trial court decisions in domestic relations cases is "abuse of discretion." *Edwards v. Edwards*, 2d Dist. Montgomery No. 25309, 2013–Ohio–117, ¶ 17. Trial courts have broad discretion in allocating parental rights and responsibilities, and we will affirm a custody determination absent an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "Abuse of discretion is a term used to indicate that a trial court's

decision is unreasonable, arbitrary or unconscionable." *Montei v. Montei*, 2d Dist. Clark No.2013 CA 24, 2013–Ohio–5343, ¶ 28.

{¶ 32} The issue of witness credibility is primarily for the trier of fact to determine. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *In re J.Y.*, 2d Dist. Miami No. 07–CA–35, 2008–Ohio–3485, ¶ 33, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trial court was free to believe all, some, or none of the testimony presented by A.A., S.H., and their witnesses. The trial court specifically stated that it found S.H. more credible.

{¶ 33} We conclude that the trial court did not abuse its discretion in giving more credence to the testimony of S.H. than to A.A. or W.. We further conclude that there is evidence in the record to support the trial court's finding that awarding custody to S.H. is in the best interest of the child. We find no abuse of discretion.

{¶ 34} The Second Assignment of Error is overruled.


## IV. Conclusion

{¶ 35} Both of A.A.'s assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

Jeffrey D. Slyman
Eric Stamps
Hon. Thomas J. Capper