OPINION
{¶ 1} Appellant Gavin Smith appeals a judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio, which granted legal custody of his minor son, Izaak to the maternal grandparents, Carla and Eugene Quigg, the appellees herein. The court also found appellant in contempt of court and ordered him and his parents to pay the costs of the litigation. Appellant assigns eight errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR EMERGENCY CUSTODY AS A PENALTY TO APPELLANT FOR FAILURE TO COMPLY WITH VISITATION ORDER (SIC) OF THE APPELLEES.
 {¶ 3} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF IZAAK TO APPELLEES.
 {¶ 4} "III. TRIAL COURT ERRED IN NOT PERMITTING THE APPELLANT/FATHER THE ABILITY TO SUBMIT PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW AT TH4E CONCLUSION OF THE TRIAL MERELY BECAUSE HE WAS A PRO SE LITIGANT.
 {¶ 5} "IV. CHILD SUPPORT AS ORDERED BY THE TRIAL COURT IS CALCULATED IN ERROR AS THE COURT SHOULD HAVE TAKEN INTO ACCOUNT THE SOCIAL SECURITY BENEFITS OF THE MINOR CHILD AND SHOULD NOT HAVE IMPUTED $50,000.00 AS INCOME TO THE APPELLANT.
 {¶ 6} "V. TRIAL COURT ERRED IN NOT FINDING THE APPELLEES IN CONTEMPT OF COURT FOR THEIR FAILURE TO ABIDE BY THE OCTOBER 2001 AGREED ENTRY.
 {¶ 7} "VI. TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THAT APPELLANT HAVE NO INDEPENDENT PARENTING TIME WITH THE MINOR CHILD.
 {¶ 8} "VII. GUARDIAN AD LITEM FAILED TO PROPERLY INVESTIGATE THIS MATTER IN ORDER TO FORM AN UNBIASED OPINION AS TO THE BEST INTEREST OF THE CHILD AND PURSUANT TO ALL FACTORS.
 {¶ 9} "VIII. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THE APPELLANT GUILTY OF CIVIL AND CRIMINAL CONTEMPT."
 {¶ 10} The record indicates Christina Quigg and appellant, an unmarried couple, had a child, Izaak, on April 26, 1998. In December of 1998, appellant was legally declared Izaak's father, and on January 22, 1999, appellant filed for custody of Izaak. On October 27, 1999, the court named appellant the residential parent for Izaak. On February 21, 2001, Christina Quigg was killed in a train/automobile crash. Appellee Carla Quigg is Christina's biological mother and her husband Appellee Eugene Quigg is her father by adoption. Gavin's parents, Gregory and Joyce Smith (hereinafter the Smiths) are not parties to this appeal, but prosecuted their own appeal, see Smith v. Quigg,
Fairfield App. No. 2005-CA-001, ___-Ohio-___.
 {¶ 11} After appellant obtained custody of Izaak in 1999, the child resided at the home of appellant's parents, the Smiths. Appellant has an older child with whom he has visitation rights. During visitation, this child would stay at the Smiths' home. At some points in time, appellant also resided there, but even when appellant was not residing with the Smiths, his children stayed with them and were parented at least in part by them.
 {¶ 12} On September 17, 2001, the court granted appellees rights of companionship with Izaak. On October 5, 2001, appellant denied appellees their scheduled companionship. On October 10, 2001, the court entered a judgment formally joining appellees and allocating them visitation rights. Part of the order directed appellees to comply with the wishes of appellant regarding the religious training for the minor child. Appellees' visitation with Izaak continued to be a source of conflict between the parties.
 {¶ 13} At least part of the friction between appellant and the Smiths on one side, and appellees on the other arose out of the parties' religious beliefs. Appellant was raised as a Jehovah's Witness, although he became disfellowshipped from the church and does not attend services. Joyce Smith is a practicing Jehovah's Witness. Appellant's father Gregory Smith does not attend any church but wants Izaak to be raised as a Jehovah's Witness. Appellees are Methodist.
 {¶ 14} Jehovah's Witnesses do not celebrate birthdays, holidays, or political and national holidays. They do not say the pledge of allegiance, do not salute the flag, and do not honor other secular icons. Jehovah's Witnesses do not participate in competitive team sports. By contrast, appellees' Methodist church does not forbid those activities.
 {¶ 15} On January 2, 2002 and on August 22, 2002, appellees filed a motion for contempt against appellant for denying their companionship rights. In the August 22 motion appellees also moved for reallocation of companionship rights. On October 23, 2002, the court appointed a guardian ad litem for Izaak.
 {¶ 16} On May 4, 2003 Dr. Jack Tarpey submitted his report on the psychological evaluations he had done on appellees and on appellant. Dr. Tarpey reported Izaak had no developmental difficulties and was age appropriate in his behavior and abilities. Dr. Tarpey reported he observed Izaak's interaction with appellant and there was no indication of avoidance. Dr. Tarpey also indicated he found nothing in his evaluation of appellees to justify appellant's criticisms of them, but noted appellant had a strong motivation to deny them a relationship with Izaak.
 {¶ 17} On May 13, 2003, the Smiths commenced a proceeding to adopt Izaak in Franklin County, Ohio. In this action, appellant consented to their adoption of his son. The Fairfield County court was not notified of the adoption proceeding, nor were the appellees or the guardian ad litem. On May 27, 2003, appellees filed a motion for custody of Izaak in Fairfield County, Ohio, where all the previous litigation had taken place.
 {¶ 18} On July 3, 2003, the Franklin County Probate Court issued a final decree of adoption, but later vacated this decree on August 28, 2003. The Franklin County Probate Court transferred the adoption case to the Fairfield County Probate Court, which subsequently dismissed the adoption proceedings.
 {¶ 19} On September 2, 2003, appellees filed a motion for emergency custody of Izaak. The court granted the motion. On September 11, 2003, the Smiths filed a motion to intervene, which was also granted. At the hearing on the emergency custody order, the Smiths were awarded temporary custody of Izaak with appellees receiving companionship rights. The court ordered the Smiths to submit to psychological testing by Dr. Tarpey.
 {¶ 20} Conflict between appellant and the appellees continued, and in December of 2003, appellees again filed for emergency custody. The court granted the emergency custody order on behalf of appellees, and at the subsequent hearing, the court continued temporary custody of Izaak with appellees. The Smiths received companionship rights, but appellant was not given any specific companionship rights.
 {¶ 21} The record indicates both appellant and his mother Janice Smith participated in physical abuse of Izaak. After Izaak reported incidents of inappropriate touching by Joyce Smith, the Fairfield County Children's Services investigated but did not intervene. The guardian ad litem was extremely critical of appellant and the Smiths, and their own counselor testified they were inflexible and Joyce Smith is hot-headed.
 {¶ 22} In October of 2003, appellees moved the court for an order that appellant and the Smiths pay all attorney fees, guardian ad litem fees, psychological examination fees, and other costs associated with the proceedings. The court sustained the motion and ordered appellant and the Smiths collectively to pay $105,540.37 with statutory interest.
 {¶ 23} At the outset, we note the trial court awarded "permanent custody" of Izaak to appellees. Our review of the order indicates the court misused the word permanent, and in fact awarded legal custody to appellees. The court found appellant had abandoned Izaak, but did not terminate his parental rights.
 {¶ 24} In the case of In the Matter of McLaughlin Children,
Stark App. No. 2002C-A-00316, 2003-Ohio-761, this court held a trial court has broad discretion in matters concerning the allocation of parental rights and responsibilities and we will not disturb its decision on appeal absent an abuse of discretion.Masters v. Masters (1994), 69 Ohio St.3d 83, 85,630 N.E.2d 655. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. The trial court has discretion to evaluate the credibility of witnesses, and an appellate court may not substitute its judgment for that of the finder of fact, see State v. Awan (1986), 22 Ohio St.3d 121.
 I. {¶ 25} In his first assignment of error, appellant urges the court abused its discretion in its decision to award temporary custody to the appellees ex parte twice, and then continue the temporary custody after January 5th, 2004 hearing . The trial court's final judgment entry was not filed until December 30, 2004.
 {¶ 26} As appellees point out, there is no transcript of the hearing. The Juvenile Rules provide for a court to issue ex parte orders and temporary orders during the pendency of the case. Fairfield County Common Pleas, Domestic Relations Division has enacted local rules. Loc. R. 8.6 et sec. provide ex parte orders are discouraged but may be entered, inter alia, when it is shown irreparable harm to a child will occur unless immediate action is taken.
 {¶ 27} Appellant argues the reason appellees filed their motions for emergency ex parte orders was his denial of visitation, and Izaak was in no danger of irreparable harm. Appellees reply appellant's attempt to sever their relationship with Izaak would cause him to suffer irreparable harm.
 {¶ 28} The court first granted an emergency ex parte order on Sept. 2nd 2003, granting custody of Izaak to appellees, but at the hearing on September 16 the court awarded temporary custody of Izaak to the Smiths on their assurance they would honor the court's visitation orders in the future. However, the record shows they did not do so. On December 18th 2004 the court again entered an emergency ex parte order awarding custody to appellees, and continued it on Jan.5, 2004 after a hearing. At the time in question, there was a dispute over appellees' visitation rights.
 {¶ 29} It appears appellant withheld Izaak from a 48 hour visit with appellees because appellees intended to trim their Christmas tree that weekend, which is contrary to appellant's stated religious beliefs. The record indicates appellant and the Smiths paddled Izaak if he participated in any of appellees' activities if those activities were forbidden by appellant's religion. Immediately after the denial of visitation the appellees filed for the emergency order.
 {¶ 30} Because we lack a transcript of either of the hearings we must assume the regularity of proceedings, Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
 {¶ 31} The record does not support appellant's argument the change of custody was a punishment for contempt, and the court did not find any party in contempt at either of the hearings. Finally, these were temporary orders, and the court's final order supercedes the temporary orders. We find the issue is moot.
 {¶ 32} The first assignment of error is overruled.
 II. {¶ 33} In his second assignment of error, appellant argues the court erred in awarding custody of Izaak to the appellees. Appellant cites numerous cases standing for the proposition a parent has a fundamental right to raise his or her child, and before a child may be placed in the custody of a non-parent, the court must find the parent abandoned the child contractually relinquished the child, was totally incapable of providing for the child, or that giving the parent custody would be detrimental to the child. See, e.g., Troxel v. Granville (2000),530 U.S. 57, 120 S.CT. 2054; In re: Perales (1977), 52 Ohio St.2d 89;Hockstock v. Hockstock, (2002), 98 Ohio St.3d 238, 781 N.E.2d 971.
 {¶ 34} Interestingly, the Hockstock court explained an earlier case involving a child custody dispute between a natural parent and a non-parent in Masitto v. Masitto (1986),22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857. The Supreme Court stated: "In Masitto a natural father agreed to the appointment, by the probate court, of the child's maternal grandparents as guardians for his minor child. The father later agreed to a decree of divorce from the child's mother that made no explicit award of custody but rather incorporated the probate court's guardianship order. When the father later moved for a change of custody, the trial court ruled that, based upon the "best interest of the child" standard of R.C. 3109.04(B), the grandparents should retain custody of the child. The court made no finding with respect to the unsuitability of the father, and in fact, specifically found that he was "a fit person to have custody."
 {¶ 35} The Supreme Court framed the issue before theMasitto court: whether the trial court should have made a parental unsuitability determination before deciding the case based upon the best interest of the child."
 {¶ 36} The Supreme Court ultimately upheld the trial court, finding an unsuitability determination had been made when the father had agreed to the probate court's guardianship order, i.e., he relinquished his right to custody by contractually agreeing to the appointment of the child's grandparents as legal guardians, and later reaffirmed this relinquishment in the divorce decree.
 {¶ 37} The trial court here found appellant had abandoned Izaak. Appellant had relinquished his parental rights in the unsuccessful adoption action in Franklin County. Although appellant argues because the adoption order was vacated and the adoption case ultimately dismissed, his consent to the adoption is void. While appellant may well be technically correct, the entire adoption attempt nevertheless indicates his lack of commitment to being Izaak's father. The record also includes much evidence showing appellant had relinquished Izaak's caretaking to his parents and intended to continue to do so. Finally, there was evidence presented at trial that appellant abused Izaak physically and emotionally. It is clear appellant wanted the Smiths to have actual custody of Izaak.
 {¶ 38} Because the court found appellant was unsuitable to have custody of Izaak, and in fact did not want custody, the issue of who should have him did come down to a choice between the appellees or the Smiths. Because appellees' daughter had died, the appellees have a statutorily protected right to be directly involved with Izaak, while the Smiths do not. The trial court set out each factor of R.C. 3109.04, and made specific findings on each, totaling some five pages in length. The court concluded on every applicable statutory factor, Izaak's best interest lay in placing him with appellees.
 {¶ 39} We find the trial court's decision was not an abuse of discretion and is supported by the record.
 {¶ 40} The second assignment of error is overruled.
 III. {¶ 41} In his third assignment of error, appellant argues the court erred in not permitting him to submit proposed findings of fact and conclusions of law because he was a pro se litigant. The Smiths and appellees submitted findings of fact and conclusions of law.
 {¶ 42} Civ. R. 53 provides when a request for findings of fact and conclusions of law is made, the court may in its discretion require any or all of the parties to submit proposed findings of fact and conclusions of law. Appellant urges this action was an abuse of discretion because it severely limited his ability to present his position to the court for consideration.
 {¶ 43} As appellees note, appellant failed to object to the court's ruling at the time. Appellant is deemed to have waived this error, see, e.g., LeFort v. Century 21 Maitland RealtyCompany (1987), 32 Ohio St. 3d 121.
 {¶ 44} Our review of the record leads us to conclude appellant vigorously advanced his position throughout the case, and at trial. The court's judgment entry demonstrates it thoroughly understood all parties' positions on the issues.
 {¶ 45} The third assignment of error is overruled.
 IV. {¶ 46} In his fourth assignment of error, appellant challenges the court's calculation of child support in two ways. First, appellant urges the court should have taken into account the Social Security benefits Izaak receives from the death of his mother. Appellant cites Williams v. Williams (2000),88 Ohio St. 3d 441, 727 N.E. 2d 895, as authority for the proposition an obligor is entitled to a direct set-off of Social Security benefits received by a minor child.
 {¶ 47} In Williams, the obligor was the disabled parent, on whose account the minor child was entitled to receive Social Security benefits. In the case at bar, Isaak receives Social Security benefits only from his mother and not from appellant, so we find appellant is not entitled to set off the Social Security benefits from his child support obligation.
 {¶ 48} Appellant alleges he pays child support for his other child, but this amount was not taken into account when the court computed the child support in this matter. Appellant also urges his true income is closer to $37,000 per year than to the $50,000 per year the court attributed to him.
 {¶ 49} We have reviewed the record, and find there is inconsistent evidence regarding appellant's income.
 {¶ 50} R.C. 3115.05 requires the parents verify their incomes by means of pay stubs, employer statements, information related to self-generated income, or tax returns. Appellant did not verify his income and did not demonstrate he paid child support for his daughter. Considering the conflicting evidence, appellant cannot now complain the court erred, because he invited any possible error by not submitting verification of his income as required by statute.
 {¶ 51} The court has continuing jurisdiction to re-visit the issue of child support and to modify it if necessary.
 {¶ 52} The fourth assignment of error is overruled.
 V. {¶ 53} In his fifth assignment of error, appellant argues the court abused its discretion when it did not find the appellees in contempt of its October 10, 2001 order. The order stated the appellees shall comply with the wishes of the plaintiff [appellant] regarding the religious training for the minor child.
 {¶ 54} Appellees point out there were several subsequent orders entered after the October 10, 2001 order, none of which contain this language.
 {¶ 55} The trial court issued the October 10th order, and is the fact finder regarding compliance with it. A trial court's finding of contempt may not be reversed absent an abuse of discretion, State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10. This court cannot find the trial court abused its discretion in finding appellees were not in contempt of court.
 {¶ 56} The fifth assignment of error is overruled.
 VI. {¶ 57} In his sixth assignment of error appellant urges the court abused its discretion in failing to grant him independent parenting time with Izaak. The court granted the Smiths regular scheduled visitation.
 {¶ 58} The court found appellant had abandoned Izaak and indicated he had no interest in parenting him. The record indicates appellant's previous practice was to share parenting time and duties with the Smiths and the court found appellant could continue to visit with Izaak when he was at the Smiths' home. As such, the court's order is not an abuse of discretion.
 {¶ 59} The trial court has continuing jurisdiction over visitation orders and may modify them under the proper circumstances.
 {¶ 60} The sixth assignment of error is overruled.
 VII. {¶ 61} In his seventh assignment of error, appellant urges the court abused its discretion in not replacing the guardian ad litem because he did not appropriately discharge his duties and did not act fairly.
 {¶ 62} Loc. R. 13.2 of the Fairfield County Domestic Relations Court sets forth the duties of the guardian ad litem. The Rule notes the feasibility of some of the duties depends upon the age of the children and the specific circumstances of the case, and the guardian ad litem has discretion to tailor each duty listed to the needs of the individual case. The duties are: (a) interview the child(ren) and observe each parent with the child (ren); (b) review pleadings and consult with each attorney as to position and issues; (c) investigate all significant persons and interview independently; (d) obtain records e.g., school, criminal, medical, psychological, child protective agency; (e) perform home visits (this may be combined with the interview process); (f) evaluate the necessity, if any, of psychological evaluations or counseling; and file a motion requesting the same; (g) communicate with the protective services workers; and (h) attend all depositions concerning the best interest of the child (ren) incompetent.
 {¶ 63} Appellant argues the guardian ad litem did not make home visits to his home and only met with him on one or two occasions. Appellant argues the guardian ad litem did not report on appellees' various shortcomings but focused at length on those of the Smiths and of appellant.
 {¶ 64} The guardian ad litem reported appellant repeatedly lied about his religious observances and church attendance, and the report gives the distinct impression the guardian ad litem questioned the sincerity of appellant's beliefs. The guardian ad litem's report included discussions of many other issues including Izaak's interactions with appellant, the Smiths, and appellees; the corporal punishment and psychological abuse administered by appellant and Joyce Smith; Izaak's report of sexual abuse by Joyce Smith; and the lack of interest appellant displayed for being Izaak's caregiver.
 {¶ 65} The guardian ad litem acts on behalf of the minor child only, and must focus on what is in the child's best interest, see, e.g., In Re: Hoffman, 97 Ohio St.3d 92,2002-Ohio-5368. The guardian ad litem must provide the court with an independent evaluation of the issues. Id. The guardian ad litem is free to assess the information he gathers, and in fact must do so in performing his duties.
 {¶ 66} The trial court is not bound by any findings or recommendations of a guardian ad litem, and will review the guardian ad litem's report in connection with all the other evidence presented to it.
 {¶ 67} Our review of the record indicates the guardian ad litem performed the duties required by the local rule, and was available for cross-examination on his report by all parties at trial. The record here indicates the court received and weighed a vast amount of evidence in addition to the guardian ad litem's report. The court is the finder of fact, and assesses the weight and credibility of the evidence before it. This court may not substitute its judgment for that of the trial court.McLaughlin, supra.
 {¶ 68} We find the trial court did not abuse its discretion in not removing the guardian ad litem. Accordingly, the seventh assignment of error is overruled.
 VII. {¶ 69} Appellant argues the appellees should have been found in contempt of court for failing to honor his wishes regarding Izaak's religious training, and appellant's actions which the court found contemptuous were in reaction to his perception of a threat to Izaak's spiritual development.
 {¶ 70} We reject the above argument, not only because the court did not find appellees' actions were improper, but also because one party's disobedience to a court order does not justify the other party's disobedience. Appellant argues the court's orders were contradictory, and so appellees chose the portions they would obey. It appears to this court it was appellant who did so. If a court's order is unclear or contradictory the appropriate action is to bring this to the court's attention.
 {¶ 71} Appellant was ordered to pay all appellees' legal fees, all guardian ad litem fees, all expert fees, the cost of all the psychological evaluations, costs of depositions and transcriptions, and for the parenting classes both the Smiths and appellees attended. The total judgment against appellant and the Smiths is $105,540.37. Appellant argues the large judgment against them is punitive and contrary to Ohio law pertaining to contempt proceedings.
 {¶ 72} The court found appellant and the Smiths in civil and criminal contempt in the final entry dated December 30, 2004, although the parties had filed motions at various times throughout the case. The court found because of the contemptuous actions of appellant and the Smiths, appellees were required to take drastic, prolonged court action. The court found all activity and expenses after the initial visitation order are a result of appellant's improper conduct in concert with the Smiths. The court found appellant and the Smiths had all operated in bad faith, and all the fees stemmed entirely from their refusal to comply with the orders of the court.
 {¶ 73} R.C. 3109.05 provides a person found in contempt for interfering with parenting time rights shall pay all court costs arising out of any contempt proceeding against the person, along with reasonable attorney fees as determined by the court to have arisen in relation to the contemptuous acts.
 {¶ 74} R.C. 2705.05 sets forth the criminal penalties for contempt. For a first offense the fine is not more than $200 and imprisonment of no more than 30 days; a second offense a fine of not more $500 and not more than 60 days in jail; and for third or subsequent offenses, a fine of not more than $1,000 and a definite term of imprisonment of not more than 90 days in jail, or both.
 {¶ 75} The trial court found the parties' contemptuous conduct arose after the issuance of the original visitation order, and the contemptuous conduct in disobeying the order is what gave rise to the entire action. The court found the fees were reasonable and necessary.
 {¶ 76} The trial court specifically found both appellant and the Smiths have a "track record" of total distain for any court order and believe their wishes outweigh the court's order. The court found they all participated in the fraudulent adoption proceedings in July 2003. The court found appellant and the Smiths never had any intention to allow appellees any contact with the child.
 {¶ 77} Our review of the record leads us to conclude the trial court did not abuse its discretion in requiring appellant and the Smiths to pay the costs and fees incurred in the litigation.
 {¶ 78} The eighth assignment of error is overruled.
 {¶ 79} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division of Fairfield County, Ohio, is affirmed.
Gwin, J., Wise, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio, is affirmed. Costs to appellant.