[Cite as *Lupia v. Lupia*, 2026-Ohio-1059.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Lupia, | : | |
| Plaintiff-Appellant, | : | No. 25AP-483 |
| v. | : | (C.P.C. No. 23DR-3665) |
| Rania Lupia, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 26, 2026

**On brief:** *Grossman Law Offices*, and *John H. Cousins, IV*, for appellant. **Argued:** *John H. Cousins, IV*.

**On brief:** *Trolinger Law Offices, LLC*, and *Clayborne B. Johnson, III*, for appellee. **Argued:** *Clayborne B. Johnson, III*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Michael Lupia, appeals from the May 21, 2025 judgment and decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, designating defendant-appellee, Rania Lupia, as the residential parent of their minor child for school placement purposes. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} In April 2016, Mr. Lupia and Ms. Lupia were married in Columbus, Franklin County, Ohio. One child, G.L., was born as issue of their marriage in July 2019. Mr. Lupia filed a complaint for divorce in November 2023 on grounds of incompatibility, among other things. The parties voluntarily entered into a separation agreement in October 2024, which

provided for the resolution of all matters except the allocation of parental rights and responsibilities for their minor child.  Ultimately, the trial court approved and incorporated the parties' separation agreement as part of the decree of divorce.

{¶ 3}  The sole issue in this case is the trial court's designation of Ms. Lupia as the residential parent of G.L. for school placement purposes.  Although the parties agreed on shared parenting and other matters related to the upbringing of G.L., they disagreed on who should be designated the residential parent for school placement purposes. (*See* Jan. 23, 2025 Stip. for Trial.)  Mr. Lupia contended G.L. should reside with him in the parties' marital home and attend school in Upper Arlington, Franklin County, Ohio, while Ms. Lupia argued G.L. should continue residing with her and attending school in Rocky River, Cuyahoga County, Ohio, as described more below.

{¶ 4}  In January 2025, the trial court conducted a three-day trial on the matter. Both parties appeared with counsel and provided testimony.  Ms. Lupia's sister-in-law, Brittanie Shakkour, and the guardian ad litem ("GAL") for G.L., Christopher Heckert, also testified.  On May 21, 2025, the court issued its decision and judgment entry granting Mr. Lupia a divorce on grounds of incompatibility and designating Ms. Lupia as the residential parent of G.L. for school placement purposes.

{¶ 5}  Mr. Lupia timely appealed from that judgment and raises the following assignment of error for our review:

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DESIGNATING MOTHER AS THE SCHOOL-PLACEMENT PARENT WHERE THE PARTIES HAD AGREED THAT UPPER ARLINGTON WOULD BE THE CHILD'S SCHOOL DISTRICT, WHERE MOTHER UNILATERALLY RELOCATED TO CLEVELAND IRRESPECTIVE OF HER DESIGNATION AS SCHOOL-PLACEMENT PARENT, WHERE THE MARITAL RESIDENCE REMAINED IN UPPER ARLINGTON, WHERE THE GAL REPEATEDLY RECOMMENDED UPPER ARLINGTON AS THE SCHOOL-PLACEMENT, AND WHERE THE TRIAL COURT'S CONCLUSION DID NOT LOGICALLY FOLLOW ITS OWN FINDINGS.

## II.  ANALYSIS

{¶ 6}  In his sole assignment of error, Mr. Lupia argues the trial court abused its discretion in designating Ms. Lupia as G.L.'s school placement parent.  For the following reasons, we disagree.

### A.  Applicable Law and Standard of Review

{¶ 7}  R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children.  In a divorce case, a trial court is required to allocate parental rights and responsibilities for the care of the minor children of the marriage.  R.C. 3109.04(A).  In doing so, the court must consider what would be in the best interest of the child. R.C. 3109.04(B).  Through R.C. 3109.04(F)(1), the General Assembly has set out the following non-exhaustive list of factors a trial court must consider when determining the best interest of the child for purposes of allocating parental rights and responsibilities:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 8}  R.C. 3109.04(F)(2) provides additional factors for the court to consider in determining whether shared parenting is in the best interest of the child.  In this case, the parties agreed to shared parenting time, and neither party challenged the trial court's consideration of these factors or determination that shared parenting is in G.L.'s best interest on appeal.

{¶ 9}  A trial court must follow R.C. 3109.04 when deciding child custody matters, but it has broad discretion to determine the appropriate allocation of parental rights and responsibilities, including designating a school placement parent. *See, e.g., Pallone v. Pallone*, 2017-Ohio-9324, ¶ 36 (10th Dist.), citing *Parker v. Parker*, 2006-Ohio-4110, ¶ 23 (10th Dist.); *Reese v. Reese*, 2023-Ohio-360, ¶ 8 (10th Dist.), quoting *Miller v. Miller*, 37

Ohio St.3d 71, 74 (1988) (" '[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned' "). Accordingly, we review a trial court's allocation of parental rights and responsibilities for an abuse of discretion. *Reese* at ¶ 8, citing *Pallone* at ¶ 10.

{¶ 10} "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations omitted.) *State v. Weaver*, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19.

{¶ 11} "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed. 2014). A decision may also be arbitrary if it lacks an adequate determining principle and is not governed by any fixed rules or standards. *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed. 1979). *See also Hackett* at ¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, L.L.P. v. Frutta Del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.). Further, "[a]n abuse of discretion may also be found where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *State v. Harris*, 2023-Ohio-3994, ¶ 73 (10th Dist.), quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), citing *Berger v. Mayfield Hts.*, 265 F.3d 399, 402 (6th Cir. 2001). *See also Bellamy v. Montgomery*, 2012-Ohio-4304, ¶ 7 (10th Dist.).

{¶ 12} The question of whether a trial court correctly interpreted and applied a statute is a question of law, which we review de novo. *State v. Willig*, 2010-Ohio-2560, ¶ 14 (10th Dist.).

**B. The trial court did not abuse its discretion in designating Ms. Lupia as the school-placement parent.**

{¶ 13} The parties met and began dating in 2011 while they were both living and working in the Columbus area. Although Ms. Lupia moved to Chicago in 2012, she returned to Columbus 18 months later. While living in Columbus, the parties moved in together in late 2014, married in 2016, and had a son together in 2019. In 2020, the parties purchased their marital residence in Upper Arlington. It is undisputed the parties purchased this home with the general understanding that G.L. would attend Upper Arlington schools, the quality of which is not in dispute. (*See*, *e.g.*, Jan. 23, 2025 Tr. Vol. I at 64, 77; Jan. 24, 2025 Tr. Vol. II at 148-70.) However, in 2021, when G.L. was two years old, Mr. Lupia expressed his desire to terminate their marriage and the parties agreed to separate. (*See* Tr. Vol. I at 19-21, 49-50, 84.)

{¶ 14} Ms. Lupia's employment at Molina Healthcare allows her to work from home. (Tr. Vol. I at 12-13; 81.) Thus, in October 2021, Ms. Lupia moved out of the marital residence and into her mother's home in Amherst, Lorain County, Ohio, where she lived for approximately six months. In 2022, Ms. Lupia purchased a home in Rocky River, Cuyahoga County, Ohio, to remain close to her mother and live in the same town as her brother and his family. At that time, Ms. Lupia believed Mr. Lupia was in support of G.L. attending school in the northeast Ohio area. (*See* Tr. Vol. I at 51-63.) Her understanding is confirmed by text messages exchanged between the parties in November 2023—from before and after Mr. Lupia filed his complaint for divorce—discussing different schools in the Cleveland area that G.L. might attend. (*See* Tr. Vol. I at 55-64; Def.'s Tr. Ex. B.) Since moving to northeast Ohio, Ms. Lupia has remained in that area and is unwilling to move back to central Ohio. (Tr. Vol. I at 22, 64, 81.) She testified it is important for her to be close to her support system and for G.L. to grow up in close proximity to his family. (*See* Tr. Vol. I at 22, 64-67.)

{¶ 15} Mr. Lupia still resides in the Upper Arlington residence the two purchased together during their marriage. His parents live in Dayton, Montgomery County, Ohio, and his two sisters live outside of Ohio. Therefore, at present, Ms. Lupia and her family reside

in northeast Ohio; Mr. Lupia lives in central Ohio; Mr. Lupia's parents are located in southwest Ohio; and Mr. Lupia's sisters live in New York and Illinois.

{¶ 16} Mr. Lupia is a self-employed entrepreneur, owning seven businesses, primarily in real estate rentals, and has a flexible work schedule. (*See* Tr. Vol. I at 32-33; Tr. Vol. II at 187-88.) The parties disagreed on whether Mr. Lupia's job would permit relocation to northeast Ohio. (*See*, *e.g.*, Tr. Vol. I at 81; Tr. Vol. II at 122-23.) In his report, the GAL opined that Mr. Lupia could relocate to the Cleveland area, but it would likely be difficult for him to reside far away from the rental units he owns and operates in Columbus. (*See* Jan. 27, 2025 Tr. Vol. III at 284-85.) Additionally, evidence and testimony presented at trial showed the parties discussed, as late as November 2023, the possibility of Mr. Lupia living part-time in the Cleveland area while G.L. is in school. (*See*, *e.g.*, Tr. Vol. I at 51-52, 59-62; Tr. Vol. II at 215-23; Def.'s Tr. Ex. B at 11-15.)

{¶ 17} Since their separation, the parties have generally shared equal parenting time, exchanging G.L. in Ashland County, Ohio each week. Although they were able to agree upon a transportation schedule, the parties recognized the current arrangement would become difficult once G.L. began school.

{¶ 18} After Mr. Lupia filed for divorce in November 2023, Mr. Lupia and Ms. Lupia both requested to be designated as the school placement parent. Both parties submitted proposed shared parenting plans with competing school placement provisions, each contending they should be G.L.'s school placement parent. In January 2025, the GAL, Mr. Heckert, filed his pretrial report recommending Mr. Lupia be designated as the school placement parent, provided that Mr. Lupia remains in the Upper Arlington School District.

{¶ 19} A three-day trial on the school placement parent designation issue began on January 23, 2025. After receiving testimony, evidence, and arguments from the parties and the GAL, the trial court entered judgment designating Ms. Lupia the residential parent for school placement purposes. On appeal, Mr. Lupia contends the trial court erred in making that determination. For the following reasons, we disagree.

{¶ 20} In designating Ms. Lupia the residential parent for school placement purposes, the trial court expressly considered each factor listed in R.C. 3109.04(F)(1)(a) through (j). The court noted that both parties requested shared parenting, but each requested to be designated as residential parent for school placement purposes. *See*

R.C. 3109.04(F)(1)(a).  The court found R.C. 3109.04(F)(1)(b) inapplicable, as neither party requested the court to interview G.L.  With respect to R.C. 3109.04(F)(1)(c), the court found G.L. is bonded to and has a close relationship with both parents and both parents shared responsibility in caring for G.L. when they resided together in the same household.

{¶ 21} The trial court discussed at length the evidence and testimony regarding G.L.'s adjustment to his home, school, and community.  *See* R.C. 3109.04(F)(1)(d).  At the time of trial, G.L. was five years old and attending pre-kindergarten classes at St. Thomas Lutheran School in Rocky River, Ohio.  It is undisputed that Upper Arlington and Rocky River offer comparable schools.

{¶ 22} Regarding G.L.'s adjustment to living with Ms. Lupia in the northeast Ohio area, the trial court found G.L. is "notably bonded with the neighborhood community at [Ms. Lupia's] current residence."  (May 31, 2025 Jgmt. Entry and Decree of Divorce at 6.) And, on review, we find ample evidence supporting this determination in the record before us.  Ms. Lupia described their neighborhood in Rocky River as "close-knit" and a "very good community."  (*See* Tr. Vol. I at 64-68.)  As the trial court noted, G.L.'s babysitter lives across the street, his teacher resides on their street, and G.L. has many friends in the neighborhood with whom he rides on the bus to school.  The court also noted that, while living with Ms. Lupia, G.L. has participated in soccer (coached by his maternal uncle), tee-ball, swim lessons, and gymnastics, thus developing connections with friends, classmates, and neighbors in the Rocky River community.  The court further found Ms. Lupia has "a large extended family" in the northeast Ohio area with whom G.L. is close, especially his six-year-old and three-year-old cousins. Ms. Lupia also testified about developing her own friendships with neighbors and her involvement in the local community.  (*See* Tr. Vol. I at 67-68.)  Ultimately, the court found Ms. Lupia has "a strong support network in the Rocky River area, which is a benefit to [G.L.]."  (Jgmt. Entry and Decree of Divorce at 6.)

{¶ 23} As to G.L.'s adjustment to living with Mr. Lupia in the central Ohio area, the trial court noted Mr. Lupia does not have any family in the central Ohio area, as his parents live in Dayton and his sisters live outside of Ohio.  At trial, Ms. Lupia expressed concern about G.L.'s limited access to community, friends, and other family members in the Upper Arlington area.  (Tr. Vol. I at 71-72.)  On that issue, the court found that, beyond G.L.'s involvement in a hockey program in summer 2024 and occasional private lessons with a

hockey coach, Mr. Lupia provided the court with limited testimony regarding G.L.'s connections to the Upper Arlington community. Indeed, no evidence presented at trial suggested G.L. had any friends in the Columbus area, much less in his Upper Arlington neighborhood. The court further noted potential limitations with Mr. Lupia's proposed support system in the event of an emergency.

{¶ 24} As to G.L.'s medical care, the trial court observed G.L., through Ms. Lupia, has an established pediatrician, allergist, and pediatric dentist in the northeast Ohio area. (Jgmt. Entry and Decree of Divorce at 6. *See* Tr. Vol. I at 41-43, 74-75. *See also* Tr. Vol. I at 33-48; Def.'s Tr. Ex. D at 5-8 (Ms. Lupia testifying about G.L.'s food allergy and her role in ensuring he has unexpired EpiPens, taking G.L. to his allergist appointments, and monitoring what G.L. eats).) In contrast, the court noted G.L. had not been seen by his Columbus pediatrician since October 2022 and did not have an established dentist in the Columbus area.

{¶ 25} With respect to R.C. 3109.04(F)(1)(e), which requires the court to consider the mental and physical health of all involved persons, the trial court did not find "any significant current mental or physical health concerns affecting either party that would alter the Court's decision regarding parental rights and responsibilities." (Jgmt. Entry and Decree of Divorce at 7.) In making that determination, the court considered Ms. Lupia's testimony about seeing a counselor "to help her with the separation from [Mr. Lupia] and their transition to a co-parenting relationship," but noted Ms. Lupia "stopped seeing the counselor in March or April of 2024 because she felt that she was doing better." (Jgmt. Entry and Decree of Divorce at 7.) The court also acknowledged Ms. Lupia's testimony that "she is currently prescribed Zoloft and had been for approximately 1.5 years" and "also takes Trazodone on occasion to help her sleep." (Jgmt. Entry and Decree of Divorce at 7.) Contrary to Mr. Lupia's suggestion otherwise, we find no basis in the record before us or the law to support his contention that the trial court's evaluation of this factor constituted an abuse of discretion under the facts and circumstances of this case. (*See* Appellant's Brief at 9.) And, in fact, we believe it would be remiss for courts to establish a precedent that could discourage parents involved in child custody matters from seeking professional medical care and following the advice of doctors, lest it be used against them in child custody proceedings.

{¶ 26} As to G.L.'s own health, the trial court noted he is allergic to eggs and tree nuts. While finding both parents are involved in G.L.'s treatment, the court noted Ms. Lupia takes G.L. to an established allergist in the Cleveland area. The court acknowledged Ms. Lupia's concerns about Mr. Lupia taking G.L.'s food allergies seriously, but noted G.L. has not had any serious allergic reactions while in either parent's care.

{¶ 27} In considering whether one parent is more likely to honor and facilitate court approved parenting time, visitation, and companion rights, as required by R.C. 3109.04(F)(1)(f), the trial court noted that both parties had been voluntarily operating under an agreed shared parenting schedule since the end of 2021. As such, the court found both parents were likely to honor the court's parenting orders. The court found R.C. 3109.04(F)(1)(g), which concerns failure to make child support payments, inapplicable, as neither party was ordered to pay child support during the pendency of the divorce proceedings. And under R.C. 3109.04(F)(1)(h), the court found there had been no abuse or neglect of G.L. by either parent. The trial court further found neither party had denied the other their parenting time with G.L., *see* R.C. 3109.04(F)(1)(i), or had plans to establish a residence outside of Ohio, *see* R.C. 3109.04(F)(1)(j).

{¶ 28} In appealing from the trial court's decision to designate Ms. Lupia as G.L.'s residential parent for purposes of school placement, Mr. Lupia does not argue that the court failed to consider any of the factors listed in R.C. 3109.04(F)(1). Rather, he contends the court erred in its weighing of the statutory factors and takes issue with the court's failure to explain why it did not adopt the GAL's recommendation that he be designated school placement parent. (*See* Appellant's Brief at 8-13.) Mr. Lupia therefore asks this court to reverse the trial court's judgment with instructions to designate him as the school placement parent or, in the alternative, to remand for a more complete analysis and proper findings under R.C. 3109.04.

{¶ 29} On review, we find the trial court considered the applicable best interest statutory factors in conjunction with all the evidence presented at the January 2025 trial (including the GAL report), made specific findings of fact, and weighed the evidence to determine that shared parenting with Ms. Lupia as the school placement parent was in G.L.'s best interest. As described above, the record supports the court's assessment of the evidence, and Mr. Lupia has not demonstrated that the court's decision is unreasonable,

arbitrary, or unconscionable. To the extent Mr. Lupia disagrees with the court's weighing of the evidence, it is axiomatic that the assessment of credibility and the weight of the evidence are reserved for the trial court; we will not second-guess that assessment on appeal. *See, e.g., Sajja v. Atluru*, 2025-Ohio-5740, ¶ 61 (10th Dist.), citing *Lumley v. Lumley*, 2009-Ohio-6992, ¶ 46 (10th Dist.), citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶ 30} We are also not persuaded by Mr. Lupia's contention that the trial court had any obligation to offer any further explanation of its decision to designate Ms. Lupia as G.L.'s school placement parent, notwithstanding the GAL's differing recommendation.

{¶ 31} It is well-established that a trial court is not bound to follow the recommendations of the GAL. *See, e.g., Shirvani v. Momeni*, 2010-Ohio-2975, ¶ 7 (10th Dist.), citing *Galloway v. Khan*, 2006-Ohio-6637, ¶ 70 (10th Dist.). As the Supreme Court of Ohio has explained, "[a] guardian ad litem makes *recommendations* to the court, *see* Sup.R. 48.03(A)(1), and the guardian's report 'shall not be considered determinative,' Sup.R. 48.06(A)(3)." (Emphasis in original.) *State ex rel. Jones v. Paschke*, 2024-Ohio-135, ¶ 18. Instead, a trial court reviews a GAL's report in connection with all other evidence presented to it and has the discretion to follow or reject it. *See, e.g., Shirvani* at ¶ 7, citing *Smith v. Quigg*, 2006-Ohio-1495, ¶ 66 (5th Dist.); *Roby v. Roby*, 2016-Ohio-7851, ¶ 22 (4th Dist.). The credibility and weight given to the testimony and recommendation of the GAL is a matter within the discretion of the trial court. *Dimitrievska v. Dimitrievski*, 2025-Ohio-1937, ¶ 60 (10th Dist.), quoting *Lumley* at ¶ 46, citing *Galloway* at ¶ 70. To be sure, the ultimate decision in any proceeding is made by the judge, and a trial court does not err in rendering a decision that is contrary to a GAL's recommendation. *See, e.g., Miller*, 37 Ohio St.3d at 74; *In re Baby C*, 2006-Ohio-2067, ¶ 95 (10th Dist.); *Fiveash v. Holtzman*, 2021-Ohio-2347, ¶ 45 (7th Dist.). Indeed, "there is no statute or controlling authority, and appellant does not cite any authority, that require[d] the trial court to rule in accordance with a recommendation from a guardian ad litem unless other evidence specifically contradicts that recommendation." *Baby C* at ¶ 95.

{¶ 32} In this case, the GAL acknowledged his recommendation as to who he believed should be designated as the school placement parent was a close call, as either party would be a suitable option. (*See* Tr. Vol. III at 255-58.) The GAL also admitted his

recommendation in favor of Mr. Lupia predominately rested on the fact that the parties purchased their marital home in Upper Arlington with G.L.'s academic future in mind. (*See* Tr. Vol. III at 255-57.) However, what the parties planned to do when they were married is not necessarily instructive as to the best interest of G.L. in the ***current*** situation. And, indeed, because G.L. (born in July 2019) was not in school when the parties purchased the Upper Arlington home in 2020 or when they separated in 2021, those intentions were never realized. In fact, at the time of trial, G.L. was already attending school in Ms. Lupia's school district in Rocky River and has never attended school in Upper Arlington.

{¶ 33} For these reasons, we cannot conclude the trial court acted arbitrarily, unconscionably, or unreasonably in declining to follow the GAL's recommendation. Nor do we find any basis to conclude, under the facts and circumstances presented in this case, that the court failed to adequately explain the reasoning behind its decision to issue an order that differed from the GAL's recommendation.

{¶ 34} Based on the foregoing, we overrule Mr. Lupia's assignment of error.

## III. CONCLUSION

{¶ 35} Having overruled Mr. Lupia's sole assignment of error, we affirm the May 21, 2025 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BOGGS, P.J., and DINGUS, J., concur.

_____